Richard M. Cieri (RC 6062)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

Marc Kieselstein, P.C. (*pro hac vice* pending*)*
Adam C. Paul (*pro hac vice* pending)
Scott R. Zemnick (*pro hac vice* pending)
Jeffrey W. Gettleman (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

Proposed Counsel for the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-_____(___) |
| DJK Residential LLC, et al.,[1] | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | |

## MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING PAYMENT OF PREPETITION UNIMPAIRED CLAIMS IN THE ORDINARY COURSE OF BUSINESS

---

[1] The Debtors in these cases include: DJK Residential LLC; A Five Star Forwarding, Inc.; A Relocation Solutions Management Company; A Three Rivers Forwarding, Inc.; A.V.L. Transportation, Inc.; Alaska USA Van Lines, Inc.; Allied Alliance Forwarding, Inc.; Allied Continental Forwarding, Inc.; Allied Domestic Forwarding, Inc.; Allied Freight Forwarding, Inc.; Allied Intermodal Forwarding, Inc.; Allied International, N.A. Inc.; Allied Interstate Transportation, Inc.; Allied Transcontinental Forwarding, Inc.; Allied Transportation Forwarding, Inc.; Allied Van Lines Terminal Company; Allied Van Lines, Inc.; Allied Van Lines, Inc. of Indiana; Americas Quality Van Lines, Inc.; Anaheim Moving Systems, Inc.; Cartwright Moving & Storage Co., Inc.; Cartwright Van Lines, Inc.; City Storage & Transfer, Inc.; CMS Holding, LLC; Executive Relocation Corporation; Federal Traffic Service, Inc.; Fleet Insurance Management, Inc.; FrontRunner Worldwide, Inc.; Global Van Lines, Inc.; Global Worldwide, Inc.; Great Falls North American, Inc.; Lyon Van Lines, Inc.; Lyon Worldwide Shipping, Inc.; Manufacturing Support Services, LLC; Meridian Mobility Resources, Inc.; Move Management Services, Inc.; NA (UK) GP Corporation; NACAL, Inc.; NAVL LLC; NorAm Forwarding, Inc.; North American Forwarding, Inc.; North American International Holding Corporation; North American International N.A., Inc.; North American Logistics, Ltd.; North American Van Lines of Texas, Inc.; North American Van Lines, Inc.; Relocation Risk Solutions, LLC; RS Acquisition Holding, LLC; RS Acquisition, LLC; SIRVA Container Lines, Inc.; SIRVA Freight Forwarding, Inc.; SIRVA Global Relocation, Inc.; SIRVA Imaging Solutions, Inc.; SIRVA MLS, Inc.; SIRVA Relocation LLC; SIRVA Settlement of Alabama, LLC; SIRVA Settlement, Inc.; SIRVA Worldwide, Inc.; SIRVA, Inc.; Trident Transport International, Inc.

The above-captioned debtors (collectively, the "Debtors") hereby move the Court (this "Motion") for the entry of an order, substantially in the form of Exhibit A, (the "Order"), authorizing payment of prepetition unimpaired claims in the ordinary course of business. In support of this Motion, the Debtors respectfully state as follows:[2]

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and General Order 203, Adoption of Prepackaged Chapter 11 Case Guidelines § VI.C.16 (Bankr. S.D.N.Y. Feb. 24, 1999) (amending General Order 201), of the local bankruptcy rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules").

### Background

4. On the date hereof (the "Petition Date"), each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated. Concurrently

---

[2] The facts and circumstances supporting this Motion are set forth in the Affidavit of Douglas V. Gathany, Senior Vice President and Treasurer of DJK Residential LLC in Support of First Day Motions (the "First Day Affidavit"), filed contemporaneously herewith.

with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases.

5. The Debtors are a leading provider of relocation and moving services to corporations, government agencies, and individual customers around the world. The Debtors' relocation services businesses (collectively, "Relocation Services") provide employee relocation services to over one thousand corporate clients and governmental units. Relocation Services operates under the SIRVA Relocation brand and offers comprehensive relocation and moving services through the Debtors' worldwide operations. Relocation Services provides fully integrated outsourcing of relocation management, reduces real estate market risk, minimizes incidental costs, and optimizes the tax treatment of relocation expenses for its clients and their employees.

6. A typical Relocation Services transaction occurs where a large, multinational employer/client transfers an employee to a different geographic region. The Debtors facilitate this transfer by, among other things, arranging for the sale of the employee's home. In many cases, the Debtors provide the employee with an advance on the employee's home equity, enabling the employee to purchase a new home in the employee's new location before the employee's existing home is sold. Under certain programs, the Debtors will purchase the employee's existing home based on a third party appraisal if the employee's property is not otherwise sold within a defined time period.

7. The Debtors provide their Relocation Services through two distinct product offerings: a "traditional" model and a "fixed-fee" model. Under the traditional model, the Debtors provide their Relocation Services, including the purchase of the employee's home, on a cost-plus basis. The Debtors pass through to the employer/client any loss (or gain) on the home

sale and all carrying costs incurred before the home is sold. For example, if the Debtors acquire the employee's existing home for $100,000 and then re-sell the home to a third party buyer for $80,000, the Debtors will be reimbursed by the traditional employer/client for the $20,000 loss resulting from the third party sale. Additional services the Debtors may provide include city orientation, school selection, visa and immigration management, and language and cultural training. The Debtors provide these services through a combination of third party contractors and the Debtors' own employees, depending, in part, on the custom for such services in the local market.

8. Under the fixed-fee model, the Debtors provide their Relocation Services for a fixed-fee, set as a percentage of the price paid by the Debtors to acquire the employee's home. The Debtors will then bear all risk and responsibility for costs in the home sale process, including any loss (or gain) on the ultimate sale of the employee's home to a third party. Using the example provided above, a "fixed-fee" employer/client would not reimburse the Debtors for the loss resulting from the third party sale, and the Debtors would incur a $20,000 loss. If the Debtors sold the home for $150,000, the Debtors would retain the $50,000 gain. For the year ended December 31, 2006, the Debtors' fixed-fee product represented approximately 46 percent of the Debtors' total relocations.

9. The Debtors are also a world leader in moving household and other goods directly on behalf of individual customers through their moving services business (collectively, "Moving Services"). Moving Services is divided between (a) Moving Services North America and

4

(b) Moving Services Europe and Asia Pacific.[3] Collectively, Moving Services operates in approximately forty-five countries through a portfolio of trademarked brands, including Allied, northAmerican, and Global in North America; Pickfords, Hoults, and Allied Pickfords in the United Kingdom; and Allied Pickfords in the Asia Pacific region. The Debtors' Allied and northAmerican trademarks, which are fully owned assets of the Debtors, are considered two of the most widely recognized and respected brand names in the moving services industry.

10. In the twelve months ended September 30, 2007, the aggregate annual revenues of the Debtors' continuing operations, including their non-Debtor affiliates, exceeded $4.0 billion. Of this amount, approximately 60 percent was attributed to Relocation Services, 31 percent to Moving Services North America, and 9 percent to Moving Services Europe and Asia Pacific. A significant portion of the Debtors' revenue effectively requires the Debtors to incur substantial expenses corresponding to transportation purchased or services provided by the Debtors, thereby reducing the Debtors' operating cash flow. However, the Debtors are, in many cases, able to pass through these costs to their clients as reimbursable expenses. As of January 2008, the Debtors and their non-Debtor affiliates employed approximately 3,200 employees worldwide with 1,760 employees in the United States.

11. Several factors led to the filing of these chapter 11 cases. By their very nature, the Debtors' businesses are directly impacted by general trends in the residential real estate market. The rapid decline in home sale prices across the United States has increased losses incurred by the Debtors on home sale transactions, including the Debtors' fixed-fee Relocation

---

[3] The Debtors' foreign affiliates are not debtors in these chapter 11 cases, and the Debtors have not sought to initiate insolvency or similar proceedings with respect to their foreign affiliates in any non-U.S. jurisdiction. However, the Debtors may seek to initiate such foreign proceedings as the facts and circumstances of their reorganization continue to develop.

Services product.[4]  Specifically, declining home prices have increased the number of homes the Debtors have been required to purchase and subsequently sell for a loss.  Further declines in the residential real estate market may increase the number or magnitude of losses sustained by the Debtors with respect to their fixed-fee home inventory.  The increased marketing time necessary to sell these properties also has increased the Debtors' carrying costs on their acquired homes, such as mortgage payments, insurance, taxes, and maintenance.

12. In addition, the weakening U.S. economy has reduced volumes in the Debtors' Moving Services operations.  Individual consumers have either been unable to sell their homes (and are thereby prevented from moving) or have postponed a planned sale and relocation as a result of depressed home prices.  According to the U.S. Census Bureau, the number of household moves in each of the years 2005, 2006, and 2007 was approximately 6 percent less than the average number of household moves between 1984 and 2002.  Difficulties in the residential real estate market may continue through the near term, further increasing the negative trend in Moving Services volumes.  The Debtors' corporate customers are also attempting to lower costs by reducing the amount or level of services purchased from the Debtors.  The Debtors' highly leveraged balance sheet and significant debt service obligations have exacerbated the Debtors' declining financial results.

13. On the Petition Date, the Debtors filed with this Court, among other pleadings, the Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan"), and the Disclosure Statement for the Debtors' Joint Plan of

---

[4] According to statistics compiled by the National Association of Realtors, sales of existing homes declined 12.8 percent between 2006 and 2007, and declined 8.5 percent between 2005 and 2006.  Sales of new homes declined by 26.5 percent between 2006 and 2007 and 18.1 percent between 2005 and 2006.  Median sale prices for existing homes declined by 1.9 percent between 2006 and 2007, and median sale prices for new homes declined 2.1 percent in the same period.

Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement"), along with a motion seeking a hearing for approval of the adequacy of the Disclosure Statement, approval of the Debtors' solicitation procedures, and confirmation of the Plan. The Plan is the product of arduous and productive negotiations between the Debtors and their secured lenders to match the Debtors' capital structure with the Debtors' present operations and prospects, and the Plan has received the overwhelming support of all participants in these negotiations. The Debtors have also developed a five-year business plan to improve their cost structure, mitigate risk, and increase profitability across the Debtors' business units. The de-leveraging contemplated by the Plan will provide the Debtors with the flexibility necessary to maximize the profitability of their present and future business operations. Moreover, the vast majority of the Debtors' remaining creditors will be paid in full, enabling the Debtors to maintain operational continuity and fully realize the opportunities created by an appropriate capital structure.

14. As described above, the Debtors have filed these chapter 11 cases to swiftly implement the Plan. The overall purpose of the Plan is to provide the Debtors with a capital structure geared appropriately to the Debtors' operational needs—not an operational restructuring involving creditors other than the Debtors' prepetition secured lenders. The Debtors' immediate ability to maintain operational continuity and the continued support of their customers and vendors is critical. Any disruption to the Debtors' ordinary course of business, including the Debtors' payment cycle, could have disastrous consequences for the Debtors' reorganization. Many, if not all, of the Debtors' customers and vendors are essential to their ongoing operations. The Debtors' Moving and Relocation Services are mutually dependent, and any disruption to either business could have drastic consequences on the other. It is critical that

7

K&E 12368166.

the Debtors avoid any disruptions during the short time the Debtors remain in bankruptcy, and the Debtors' secured creditors (the Debtors' future shareholders) are fully in agreement. The relief requested herein will affect only the timing of payments—not the ultimate recovery available to claimants under the Debtors' Plan.

**Relief Requested**

15. By this Motion, the Debtors seek authority to continue to pay, as they become due in the ordinary course of business, the Debtors' prepetition unsecured claims and other claims that are not impaired under the Plan in accordance with section 1124 of the Bankruptcy Code, including, without limitation, claims of the Debtors' prepetition transportation and service providers and those obligations arising from and in connection with the Debtors' Relocation Services (collectively, the "Unimpaired Claimants"). The Debtors do not seek to pay the Unimpaired Claimants the total aggregate amounts outstanding on the Petition Date; rather, the Debtors simply seek authority to pay such amounts as they become due in the Debtors' ordinary course of business. Based on past practice, the Debtors believe they require approximately $250.0 million per month to operate their businesses in the ordinary course. However, many payments made by the Debtors are, in the ordinary course of business, immediately reimbursable by the Debtors' customers or offset by obligations owed to the Debtors by various service providers.

16. In exchange, the Debtors will, in their business judgment and as applicable, seek agreements from the Unimpaired Claimants receiving payment on their Unimpaired Claims to continue extending credit to the Debtors on preexisting terms for the duration of these chapter 11 cases. Further, the Debtors request that the Court authorize and direct banks or other financial

8

K&E 12368166.

institutions maintaining the Debtors' accounts to honor any checks or electronic payment requests when presented for payment of an Unimpaired Claim.

17. Once again, the Debtors do not seek authority to pay all their Unimpaired Claims immediately. The Debtors seek only to pay such undisputed amounts as they come due in the ordinary course of the Debtors' business and on terms consistent with the Debtors' prepetition practices. Indeed, payment of the Unimpaired Claims in the Debtors' ordinary course of business is contemplated by, and a critical feature of, the Debtors' Plan. The Plan has achieved overwhelming support from the Debtors' prepetition secured creditors—the only class of creditors entitled to vote on the Plan—based on these creditors' own desire to minimize dislocation in the Debtors' businesses. Given that these claims are unimpaired as part of the proposed Plan, approval of this Motion merely affects the timing of such payments and not the ultimate recovery of any creditors. Accordingly, the Debtors respectfully submit that payment of the Unimpaired Claims in the ordinary course of business is especially appropriate here when the satisfaction of such claims is already a key feature of the Debtors' reorganization, necessary to preserve the value of their businesses, and will ease their administrative burdens during the very limited period pending confirmation.

18. To the extent the relief granted pursuant to this Motion duplicates relief sought by the Debtors' additional motions seeking authority to honor certain prepetition obligations, filed contemporaneously herewith, the Debtors request the Court treat such other motions as moot.

## **Basis for Relief**

19. A debtor's motion for an order authorizing the ordinary course payment of creditors whose prepetition claims will be paid in full in cash on consummation of the Debtors' plan is a "Typical First Day Motion and Order" in a prepackaged bankruptcy case. Specifically,

General Order 203 provides that a "[m]otion for an order authorizing [the] Debtor to pay creditors whose prepetition claims will be paid in full in cash on consummation under the debtor's plan" is an order that the Debtors may seek to have entered by the Court as a "First Day Motion." General Order 203 § VI.C.16.[5] The Debtors respectfully submit that such an order is warranted by the facts and circumstances of their chapter 11 cases and authorized by Bankruptcy Rule 6003 and sections 363(b) and 105 of the Bankruptcy Code.

20.     Bankruptcy Rule 6003, when coupled with section 363(b) or section 105, permits this Court to authorize the Debtors to pay their Unimpaired Claims where such relief is necessary to avoid immediate and irreparable harm. See Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm").

21.     The Debtors, their creditors, and their estates would likely suffer immediate and irreparable harm if the Debtors were unable to operate their businesses in the ordinary course. Conversely, the Debtor's authority to satisfy the Unimpaired Claims in their ordinary course of business would strengthen the perception among customers that the Debtors intend to conduct business as usual and without disruption to the Debtors' operations—a critical element of the Plan. Further, the Debtors' ordinary business operations depends on their careful coordination

---

[5] Pursuant to General Order 203 and out of an abundance of caution, the Debtors believe that certain of the Unimpaired Claimants, including certain transportation service providers utilized by the Debtors and certain customer-related claims, may be entitled to priority treatment as a result of certain state law rights or priority afforded certain customer claims under the Bankruptcy Code. See 11 U.S.C. § 507(a) (providing seventh level priority for certain customer deposits); N.Y. Com. Law § 7-307(1); N.Y. Com. Law § 7-209(1). The Debtors do not concede the validity extent, priority, or perfection of any such potential liens or claims and expressly reserve all rights with respect thereto. Regardless, the Debtors believe that no parties in interest will be prejudiced by the relief requested herein. The Plan will not impair any party that holds or may hold a priority claim.

between multiple parties and payment streams. Just one of the Debtors' thousands of combined Relocation/Moving Services transactions can involve the transfer of goods and payments between customers, independent transportation service providers, affiliated moving agents, international customs agents, appraisers, real estate brokers, and home inspectors. The stream of payments may involve offsetting payments flowing through and between these different parties arising at different times across the Debtors' payment cycle. Forcing the Debtors to suddenly terminate this complex program by distinguishing between prepetition and postpetition services and payments could materially affect the Debtors' ordinary operations. Indeed, the Debtors' failure to make timely payment could cause certain transportation service providers to refuse delivery of the goods by asserting available state law rights, see N.Y. Com. Law § 7-307(1), or by simply refusing to make delivery absent payment.

22. The Court may authorize the Debtors' payment of the Unimpaired Claims pursuant to section 363(b) of the Bankruptcy Code. Section 363(b)(1) authorizes the Court, after notice and a hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's ability to utilize property of the estate outside the ordinary course of business is governed by the business judgment standard. See In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); see also In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions . . . courts will generally not entertain objections to the debtor's conduct."); see also In re G.S. Distribution, Inc., 331 B.R. 552, 559 (Bankr. S.D.N.Y. 2005) (discussing the "business judgment" standard).

23. As debtors-in-possession, the Debtors are fiduciaries of their estates. See 11 U.S.C. § 1107(a). "As fiduciary, the debtor bears the burden of 'maximizing the value of the

11

estate . . . .'" In re Smart World Techs., LLC, 423 F.3d 166, 175 (2d Cir. 2005) (quoting Commodity Trading Futures Comm'n v. Weintraub, 471 U.S. 343, 352 (2005)). In certain cases, this fiduciary duty requires the payment of prepetition claims where such payment preserves or enhances the value available for creditors. See In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Hence, section 363(b)(1) authorizes the payment of prepetition claims where the Debtors have determined, in their business judgment, that such payments would preserve or increase the value of the Debtors' estates. See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances.").

24. The Debtors respectfully submit the relief requested herein is the best interest of their estates, their creditors, and their customers. Payment of the Unimpaired Claims will ensure that the Debtors' operations suffer only minimal disturbance as the Debtors rapidly implement a capital structure consistent with their present opportunities and future prospects. Due to the prepackaged nature of these cases and the brief time the Debtors anticipate spending in bankruptcy, analyzing each and every Unimpaired Claim to separate postpetition administrative expenses from prepetition claims would be an unnecessary burden on the Debtors and their estates. In fact, the Debtors could emerge from chapter 11 before many of the Unimpaired Claims are due in the ordinary course of the Debtors' payment cycle.

25. Since the proposed Plan provides that all Unimpaired Claims will be paid in full, no parties in interest would be prejudiced by the relief requested herein. The Debtors are not seeking to pick and choose favored vendors, trade creditors, and customers for early payment. Payment of the Unimpaired Claims in the ordinary course of business would just accelerate the

12

K&E 12368166.

same treatment otherwise provided by the Plan without imposing wasteful and potentially devastating administrative burdens.

26. This Court may also rely on its equitable powers under section 105 to grant the relief requested herein. Application of section 105(a) in the context of the Debtors' prepackaged bankruptcy is appropriate because payment is consistent with the rehabilitative policy of chapter 11. See Bank of Am. Nat'l Trust & Savs. Assoc. v. 203 N. LaSalle St. P'Ship, 526 U.S. 434, 453 (1999) (identifying the "two recognized policies" of chapter 11 as "preserving going concerns and maximizing property available to satisfy creditors"). The overriding goal of this reorganization—a reorganization that is overwhelmingly supported by the Debtors' prepetition lenders—is to provide the Debtors with a capital structure geared appropriately for their operational needs. The Debtors believe their ability to reorganize requires their continued and uninterrupted ability to honor existing obligations arising in the ordinary course of business. Accordingly, the Plan provides the Unimpaired Claimants with payment in full on account of their claims to ensure this level of operational continuity going forward.

27. Courts in this and other jurisdictions have also granted relief similar to that requested here in the context of a prepackaged bankruptcy filing. See In re Bally Total Fitness of Greater of N.Y., Case No. 07-12395 (Bankr. S.D.N.Y. Aug. 1, 2007) (authorizing prepack debtor to continue ordinary course payment of approximately $107 million in prepetition, ordinary course expenses); In re Trico Marine Servs, Inc., Case No. 04-17985 (Bankr. S.D.N.Y. Dec. 22, 2004) (authorizing prepack debtor "to pay their pre-petition claims in the ordinary course of business"); In re Choice One Commc'ns Inc., Case No. 04-16433 (Bankr. S.D.N.Y. Oct. 7, 2004); In re ATC Group Servs. Inc., Case No. 99-10437 (Bankr. S.D.N.Y. July 29, 1999); In re PhoneTel Techs., Inc., Case No. 99-10384 (Bankr. S.D.N.Y. July 15, 1999); see also

13

In re Iwo Holdings, Inc., Case No. 05-10009 (Bankr. D. Del. Feb. 9, 2005); In re McLeodUSA Inc., Case No. 05-63230 (Bankr. N.D. Ill. Oct. 31, 2005) (authorizing prepack debtor to continue ordinary course payment of approximately $60 million in prepetition, ordinary course expenses); In re Dade Behring Holdings, Inc., Case No. 02-29020 (Bankr. N.D. Ill. Aug. 1, 2002) (authorizing prepack debtor to continue ordinary course payment of approximately $65 million in prepetition, ordinary course expenses). Indeed, such a result is expressly contemplated by General Order 203.

### Waiver of Memorandum of Points and Authorities

28. This Motion includes citations to the applicable authorities and a discussion of their application to this Motion. Accordingly, the Debtors respectfully submit that such citations and discussion satisfy the requirement that the Debtors submit a separate memorandum of law in support of this Motion pursuant to Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York.

### Notice

The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agent for the Debtors' proposed postpetition secured lenders; (d) counsel to the agent for the Debtors' senior secured prepetition lenders; (e) Washington Mutual Bank and Colonial Bank, N.A., lenders to the Debtors' non-debtor affiliate, SIRVA Mortgage, Inc.; (f) counsel to LaSalle Bank, N.A., as agent for the Debtors' receivables purchase program maintained through SIRVA Relocation Credit, LLC, the Debtors' non-debtor affiliate; (g) the Internal Revenue Service; and (h) the Securities and Exchange Commission. In light of the

nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, for the reasons set forth herein and in the First Day Affidavit, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) authorizing payment of prepetition Unimpaired Claims in the ordinary course of business and (b) granting such other and further relief as is just and proper.

| | |
|---|---|
| Dated: February 5, 2008<br>New York, New York | */s/ Richard M. Cieri*<br>Richard M. Cieri (RC 6062)<br>KIRKLAND & ELLIS LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br><br>and<br><br>Marc Kieselstein, P.C. (*pro hac vice* pending)<br>Adam C. Paul (*pro hac vice* pending)<br>Scott R. Zemnick (*pro hac vice* pending)<br>Jeffrey W. Gettleman (*pro hac vice* pending)<br>KIRKLAND & ELLIS LLP<br>200 East Randolph Drive<br>Chicago, Illinois 60601<br>Telephone: (312) 861-2000<br>Facsimile: (312) 861-2200<br><br>Proposed Counsel for the Debtors and Debtors in Possession |

K&E 12368166.

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 08-_____(\_\_\_) |
| DJK Residential LLC, et al.,[1] ) | Jointly Administered |
| ) | |
| Debtors. ) | |
| ) | |

**ORDER AUTHORIZING PAYMENT OF PREPETITION UNIMPAIRED CLAIMS IN THE ORDINARY COURSE OF BUSINESS**

Upon the motion (the "Motion")[2] of the above-captioned debtors (collectively, the "Debtors") for the entry of an order (this "Order") authorizing payment of prepetition Unimpaired Claims in the ordinary course of business; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; service of the Motion having been adequate and appropriate under

---

[1] The Debtors in these cases include: DJK Residential LLC; A Five Star Forwarding, Inc.; A Relocation Solutions Management Company; A Three Rivers Forwarding, Inc.; A.V.L. Transportation, Inc.; Alaska USA Van Lines, Inc.; Allied Alliance Forwarding, Inc.; Allied Continental Forwarding, Inc.; Allied Domestic Forwarding, Inc.; Allied Freight Forwarding, Inc.; Allied Intermodal Forwarding, Inc.; Allied International, N.A. Inc.; Allied Interstate Transportation, Inc.; Allied Transcontinental Forwarding, Inc.; Allied Transportation Forwarding, Inc.; Allied Van Lines Terminal Company; Allied Van Lines, Inc.; Allied Van Lines, Inc. of Indiana; Americas Quality Van Lines, Inc.; Anaheim Moving Systems, Inc.; Cartwright Moving & Storage Co., Inc.; Cartwright Van Lines, Inc.; City Storage & Transfer, Inc.; CMS Holding, LLC; Executive Relocation Corporation; Federal Traffic Service, Inc.; Fleet Insurance Management, Inc.; FrontRunner Worldwide, Inc.; Global Van Lines, Inc.; Global Worldwide, Inc.; Great Falls North American, Inc.; Lyon Van Lines, Inc.; Lyon Worldwide Shipping, Inc.; Manufacturing Support Services, LLC; Meridian Mobility Resources, Inc.; Move Management Services, Inc.; NA (UK) GP Corporation; NACAL, Inc.; NAVL LLC; NorAm Forwarding, Inc.; North American Forwarding, Inc.; North American International Holding Corporation; North American International N.A., Inc.; North American Logistics, Ltd.; North American Van Lines of Texas, Inc.; North American Van Lines, Inc.; Relocation Risk Solutions, LLC; RS Acquisition Holding, LLC; RS Acquisition, LLC; SIRVA Container Lines, Inc.; SIRVA Freight Forwarding, Inc.; SIRVA Global Relocation, Inc.; SIRVA Imaging Solutions, Inc.; SIRVA MLS, Inc.; SIRVA Relocation LLC; SIRVA Settlement of Alabama, LLC; SIRVA Settlement, Inc.; SIRVA Worldwide, Inc.; SIRVA, Inc.; Trident Transport International, Inc.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

the circumstances; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED

1. The Motion is granted as provided herein.

2. The Debtors are authorized, but not directed, to pay Unimpaired Claims in the ordinary course of business as the Unimpaired Claims become due and payable, without regard to any acceleration arising from the commencement of these chapter 11 cases, if any.

3. The Debtors are authorized, in their sole discretion, to seek agreements from Unimpaired Claimants to provide continuing trade credit on the prepetition terms provided to the Debtors.

4. If any Unimpaired Claimant accepts payment pursuant to this Order and thereafter does not continue to provide goods or services to the Debtors during the pendency of these chapter 11 cases on the same terms that existed prior to the Petition Date, then (a) any payment relating to this Order made after the Petition Date shall be deemed an avoidable postpetition transfer and, therefore, shall be either recoverable by the Debtors in cash or recharacterized as payment for any postpetition amounts payable to such Unimpaired Claimant upon written notification by the Debtors and (b) upon such recovery or recharacterization such Unimpaired Claim shall be reinstated as a prepetition claim in the amount so recovered or recharacterized.

5. The banks and financial institutions on which checks are drawn or electronic payment requests are made in payment of the prepetition obligations approved pursuant to this Order are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized and directed to rely on the Debtors' designation of any particular

2

K&E 12368166.

check or electronic payment request as the satisfaction of an Unimpaired Claim as approved by this Order.

6. The Debtors are authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid as the satisfaction of an Unimpaired Claim as approved by this Order and that is not cleared by the applicable bank or other financial institution.

7. This Order is not intended and shall not be construed as an approval or assumption of any contract, lease, or agreement under section 365 of the Bankruptcy Code.

8. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

10. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Date: February __, 2008
New York, New York               United States Bankruptcy Judge

K&E 12368166.