PACHULSKI STANG ZIEHL &
    JONES LLP
780 Third Avenue, 36th Floor
New York, NY 10017
Telephone: 212/561-7700
Facsimile: 212/561-7777
Laura Davis Jones (DE Bar No. 2436)
Brad R. Godshall (CA Bar No. 105438)
Ira D. Kharasch (CA Bar No. 109084)
Robert J. Feinstein (NY Bar No. RF-2836)
Alan J. Kornfeld (NY Bar No. 4205647)

Proposed Counsel for Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| In re: | Chapter 11 |
|---|---|
| DJK Residential LLC, et al.,[1] | Case No. 08-10375 (JMP) |
| Debtors | Jointly Administered |

**OPPOSITION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF THE DEBTORS FOR AN ORDER (A) GRANTING AN EXTENSION OF TIME TO FILE THE SCHEDULES AND STATEMENTS OF THE DEBTORS' FINANCIAL AFFAIRS, AND (B) PERMANENTLY WAIVING**

---

[1] The Debtors in these cases include: DJK Residential LLC; A Five Star Forwarding, Inc.; A Relocation Solutions Management Company; A Three Rivers Forwarding, Inc.; A.V.L. Transportation, Inc.; Alaska USA Van Lines, Inc.; Allied Alliance Forwarding, Inc.; Allied Continental Forwarding, Inc.; Allied Domestic Forwarding, Inc.; Allied Freight Forwarding, Inc.; Allied Intermodal Forwarding, Inc.; Allied International, N.A., Inc.; Allied Interstate Transportation, Inc.; Allied Transcontinental Forwarding, Inc.; Allied Transportation Forwarding, Inc.; Allied Van Lines Terminal Company; Allied Van Liens, Inc.; Allied Van Lines, Inc. of Indiana; Americas Quality Van Lines, Inc.; Anaheim Moving Systems, Inc.; Cartwright Moving & Storage Co., Inc.; Cartwright Van Liens, Inc.; City Storage & Transfer, Inc.; CMS SIRVA, Inc., LLC; Executive Relocation Corporation; Federal Traffic Service, Inc.; Fleet Insurance Management, Inc.; FrontRunner Worldwide, Inc.; Global Van Lines, Inc.; Global Worldwide, Inc.; Great Falls North American, Inc.; Lyon Van Lines, Inc.; Lyon Worldwide Shipping, Inc.; Manufacturing Support Services, LLC; Meridian Mobility Resources, Inc.; Move Management Services, Inc.; NA (UK) GP Corporation; NCAL, Inc.; NAVL LLC; NorAm Forwarding, Inc.; North American Forwarding, Inc.; North American International SIRVA, Inc. Corporation; North American International N.A., Inc.; North American Logistics, Ltd.; North American Van Liens of Texas, Inc.; North American Van Lines, Inc.; Relocation Risk Solutions, LLC; RS Acquisition SIRVA, Inc., LLC; RS Acquisition, LLC; SIRVA Container Lines, Inc.; SIRVA Freight Forwarding, Inc.; SIRVA Global Relocation, Inc.; SIRVA Imaging Solutions, Inc.; SIRVA MLS, Inc.; SIRVA Relocation LLC; SIRVA Settlement of Alabama, LLC; SIRVA Settlement, Inc.; SIRVA Worldwide, Inc; SIRVA, Inc.; Trident Transport International, Inc.

# THE REQUIREMENT TO FILE THE SCHEDULES AND STATEMENTS UPON CONFIRMATION OF THE DEBTORS' PREPACKAGED PLAN OF REORGANIZATION

The Official Committee of Creditors Holding General Unsecured Claims (the "Committee") hereby opposes the *Motion of the Debtors for an Order (A) Granting an Extension of Time to File the Schedules and Statements of the Debtors' Financial Affairs, and (B) Permanently Waiving the Requirement to File the Schedules and Statements Upon Confirmation of the Debtors' Prepackaged Plan of Reorganization* [Docket No. ] (the "Motion"), and represents as follows:

## PRELIMINARY STATEMENT

1. There may be rare instances in which schedules of assets and liabilities and statements of financial affairs serve no purpose. Here, they are essential. The express premise of the Motion is that schedules and statements are unnecessary because they will be rendered moot by immediate plan confirmation. But the plan that the Debtors contend will render financial disclosure unnecessary is not a fully consensual, pre-negotiated plan of reorganization. It has been negotiated only with secured creditors; as to unsecured creditors, it creates one class of claims that receives a 100% recovery and another class – likely comprising thousands of claims – that receives a 0% recovery. The Debtors have discretion to pick and choose at some uncertain time which unsecured creditors are paid in full and which receive nothing.

2. The confirmability of a plan that pays certain creditors nothing depends in part on the very information to be disclosed in the schedules and statements. It cannot be

determined whether all of the assets of all the Debtors were fully encumbered prepetition without knowing the identity and location of such assets. Without such information, it is impossible to analyze lien perfection, particularly by the present deadline of March 11, 2008 for bringing claims against lenders. Further, 35% of the equity of certain foreign subsidiaries is unencumbered. This value for creditors is eviscerated under the proposed plan by substantively consolidating the assets of 49 subsidiaries, but there is no financial information by which to evaluate whether substantive consolidation is appropriate. Are some subsidiaries solvent? Are there creditors of solvent subsidiaries? Similarly, directors, officers and lenders receive releases under the plan. But the fairness of such releases is impossible to evaluate without the basic information provided in the statements and schedules: what transfers were made to such persons in the first place?

3.  Chapter 11 debtors are required to disclose financial information under oath. There is a reason that the Bankruptcy Code imposes a requirement on debtors to file schedules and statements. That information is essential to evaluating the confirmability of the Debtors' proposed plan, and they cannot avoid disclosure requirements by saying "trust me." This is not a special case in which financial disclosure is irrelevant, but a case in which the need for such disclosure is glaringly apparent. The time for filing schedules and statements should not be extended for 75 days from the petition date or permanently waived; rather, it must occur well in advance of (a) any deadline for filing claims against lenders, and (b) any substantive action on the Debtors' proposed plan.

**BACKGROUND**

4. On February 8, 2008, SIRVA, Inc. and approximately sixty affiliated entities (collectively, the "Debtors") filed petitions under chapter 11 of Title 11 of the United States Code. As set forth in the Rule 1007-2 Affidavit of Douglas V. Gathany, the Debtors are leaders in the global relocation industry, providing relocation and moving services to more than 12,000 corporate clients and governmental agencies, as well as thousands of individual consumers around the world. The Debtors have operating centers located in the United States, Asia, continental Europe, the United Kingdom, Australia, and New Zealand, and do business under the SIRVA® Relocation brand, as well as a variety of well-known brands of movers of household goods.

5. On the petition date, the Debtors filed their *Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Plan"), along with a *Disclosure Statement for the Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 32] (the "Disclosure Statement"). On the same date, the Debtors filed a Motion for Entry of an Order Scheduling a Combined Hearing Date on the Adequacy of the Disclosure Statement and Confirmation of the Plan, seeking to hold a combined hearing on approval of the Disclosure Statement *and* confirmation of the Plan within forty days.[2] The Debtors represent that their Plan is a pre-negotiated, consensual plan of reorganization supported by the only impaired class entitled to vote.

---

[2] Mr. Gathany's vaguely worded affidavit states that "prolonged chapter 11 cases would severely impair the Debtors' ongoing business operations and threaten their viability as a going concern." Gathany Aff. at 28.

4

6.      By this Motion, the Debtors ask the Court to excuse them from filing the schedules of assets and liabilities and statements of financial affairs required by Section 521 of the Bankruptcy Code by (a) extending the time within which they to April 20, 2008 (75 days after the petition date and after the requested confirmation hearing), and (b) permanently waiving the requirement upon confirmation of the Plan if confirmation occurs within the extension of time.

7.      The stated basis of the Motion is, in essence, that preparation of statements and schedules would be extremely burdensome and is pointless in view of the imminent confirmation by consensus of the Debtors' prepackaged Plan.  The Debtors state that they have tens of thousands of creditors, and that "the size, scope, and complexity of their operations, in addition to the sheer volume of data required by the Schedules and Statements, provide sufficient "cause" under the flexible requirements of Bankruptcy Rule 1007.  More importantly, the Debtors believe the prepackaged nature of their chapter 11 cases renders the time, expense, and burdens associated with assembling the Schedules and Statements unnecessary since the Debtors have sought the expeditious confirmation of their Plan within the next 40 days."  Motion at 5.

8.      The Plan is not fully consensual.  It was negotiated only among the Debtors' management and the secured prepetition lenders, and is the product of their collective decision that no other creditor constituency has an interest in the Debtors' assets.  "The Plan is the product of arduous and productive negotiations between the Debtors and their senior secured prepetition lenders . . . and the Plan has received the overwhelming support of all participants in these negotiations."  Motion at 3.

9. Under the Plan, the prepetition lenders (Class 1) receive (a) equity in the Reorganized Debtors and (b) a pro rata share in the Reorganized Debtors' Second Lien Credit Facility. General unsecured claims receive disparate treatment. Class 4 consists of "Unsecured Ongoing Operations Claims" that the Debtor proposes to pay in full. Class 5 consists of "General Unsecured Claims," in respect of which the Debtor proposes to pay nothing. Plan at 13. It is apparently within the Debtors' discretion which general unsecured creditors are paid in full and which are paid nothing. The Debtors' posit that the "vast majority" of general unsecured claims will be paid, but there is no information in the Plan or Disclosure Statement that would quantify the number or amount of claims that would receive no recovery. Clearly, "non-operational" claims could encompass a huge swath of unsecured debt, including litigation claims and claims on rejected leases and contracts.

10. In addition, Article IV of the Plan provides for the substantive consolidation of all of the Debtors, Plan at 15. This would apparently eviscerate the 35% portion of the equity interests in certain of the Debtors' foreign subsidiaries that has not been pledged to secure the United States bank debt.[3]

**ARGUMENT**

11. Section 521 of the Bankruptcy Code requires debtors to file schedules of assets and liabilities and statements of financial affairs. "A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty

---

[3] A symbol in the chart entitled "SIRVA, Inc. Corporate and Capital Structure" denotes subsidiaries for which only 65% of equity was pledged to secure US bank debt. The chart is an unnumbered exhibit to the Gathany Affidavit, three pages from the end.

6

to schedule, for the benefit of creditors, all his interests and property rights." *Oneida Motor Freight Inc., v. United Jersey Bank*, 848 F.2d 814, 816 (3d Cir. 1988) (citing *In Re Hannan*, 127 F.2d 894 (7th Cir.1942).

12. This is not an appropriate case for waiving this fundamental statutory duty. The Debtors professed belief that "no creditor or party in interest will be prejudiced by the relief requested herein" is incorrect. Motion at 5. Thousands of creditors may be classified in Class 5 and receive no distribution whatsoever. Thus the Motion depends entirely on the proclamation by the Debtors' and their lenders that the Plan is confirmable, because no other creditors are entitled to any value in a cram-down scenario.

13. Whether that is true, however, depends on the information in the schedules and statements. If there are or were unencumbered assets prepetition, there is value for creditors. The most rudimentary analysis of lien perfection requires, to begin, knowledge of the identity and location of a Debtor's assets, to determine whether perfection requirements were met. The Debtors cannot confirm a plan that pays certain creditors nothing without disclosing their assets. If they cannot list them, the Court and creditors are entitled to know that as well.

14. The Motion exacerbates what is already an untenable timing predicament. Pursuant to the Interim DIP Order, March 11, 2008 was set as the drop-dead date for the assertion of claims against lenders. If schedules are not due until 75 days after the petition date, if ever, the Committee would be deprived of a good portion of the information needed to evaluate any such claims. In view of the effective release to be

to schedule, for the benefit of creditors, all his interests and property rights." *Oneida Motor Freight Inc., v. United Jersey Bank*, 848 F.2d 814, 816 (3d Cir. 1988) (citing *In Re Hannan*, 127 F.2d 894 (7th Cir.1942).

12. This is not an appropriate case for waiving this fundamental statutory duty. The Debtors professed belief that "no creditor or party in interest will be prejudiced by the relief requested herein" is incorrect. Motion at 5. Thousands of creditors may be classified in Class 5 and receive no distribution whatsoever. Thus the Motion depends entirely on the proclamation by the Debtors' and their lenders that the Plan is confirmable, because no other creditors are entitled to any value in a cram-down scenario.

13. Whether that is true, however, depends on the information in the schedules and statements. If there are or were unencumbered assets prepetition, there is value for creditors. The most rudimentary analysis of lien perfection requires, to begin, knowledge of the identity and location of a Debtor's assets, to determine whether perfection requirements were met. The Debtors cannot confirm a plan that pays certain creditors nothing without disclosing their assets. If they cannot list them, the Court and creditors are entitled to know that as well.

14. The Motion exacerbates what is already an untenable timing predicament. Pursuant to the Interim DIP Order, March 11, 2008 was set as the drop-dead date for the assertion of claims against lenders. If schedules are not due until 75 days after the petition date, if ever, the Committee would be deprived of a good portion of the information needed to evaluate any such claims. In view of the effective release to be

received by prepetition, it is also necessary to have information concerning transfers to made to lenders within the relevant avoidance periods.

15. Similarly, the Plan provides releases to directors and officers. Transfers to such persons are disclosed in the statements of financial affairs. Extending the deadline for filing such information until after plan confirmation renders it impossible to evaluate whether the proposed releases are fair.

16. Further, the information in the schedules and statements is also necessary to begin to evaluate whether substantive consolidation is appropriate. According to the Debtors, 35% of the equity in certain foreign subsidiaries was not pledged to secure the bank debt. This is, potentially, value for unsecured creditors that disappears under the magic of the Plan. Without schedules, there is no way to assess whether these or any other of the Debtors were solvent, or whether substantive consolidation is appropriate where a creditor has a claim only against a solvent subsidiary, but is to receive nothing under the Plan.

17. If this were a fully consensual prepackaged plan of reorganization, a waiver of schedules *might* be appropriate. But it is not. It is an agreement between management and the Debtors' lenders deciding unilaterally who gets what, with a potentially significant amount of creditors slated to receive nothing, but without providing the financial information needed to justify that result. The Motion should be denied or, alternately, the deadline for filing claims against prepetition secured lenders and the scheduling of confirmation proceedings should each be adjusted to provide for the prior filing of schedules and statements by the Debtors.


8

received by prepetition, it is also necessary to have information concerning transfers to made to lenders within the relevant avoidance periods.

15. Similarly, the Plan provides releases to directors and officers. Transfers to such persons are disclosed in the statements of financial affairs. Extending the deadline for filing such information until after plan confirmation renders it impossible to evaluate whether the proposed releases are fair.

16. Further, the information in the schedules and statements is also necessary to begin to evaluate whether substantive consolidation is appropriate. According to the Debtors, 35% of the equity in certain foreign subsidiaries was not pledged to secure the bank debt. This is, potentially, value for unsecured creditors that disappears under the magic of the Plan. Without schedules, there is no way to assess whether these or any other of the Debtors were solvent, or whether substantive consolidation is appropriate where a creditor has a claim only against a solvent subsidiary, but is to receive nothing under the Plan.

17. If this were a fully consensual prepackaged plan of reorganization, a waiver of schedules *might* be appropriate. But it is not. It is an agreement between management and the Debtors' lenders deciding unilaterally who gets what, with a potentially significant amount of creditors slated to receive nothing, but without providing the financial information needed to justify that result. The Motion should be denied or, alternately, the deadline for filing claims against prepetition secured lenders and the scheduling of confirmation proceedings should each be adjusted to provide for the prior filing of schedules and statements by the Debtors.

Dated: February 24, 2008

PACHULSKI STANG ZIEHL & JONES LLP

/s/
Laura Davis Jones (DE Bar No. 2436)
Brad R. Godshall (CA Bar No. 105438)
Ira D. Kharasch (CA Bar No. 109084)
Robert J. Feinstein (NY Bar No. RF-2836)
Alan J. Kornfeld (NY Bar No. 4205647)
780 Third Avenue, 36th Floor
New York, NY 10017
Telephone: 212/561-7700
Facsimile: 212/561-7777

Proposed Counsel for Official Committee of Unsecured Creditors