GARRISON, LEVIN-EPSTEIN,
CHIMES & RICHARDSON, P.C.
Lewis H. Chimes
*SDNY Federal Bar No. LC2409*
405 Orange Street
New Haven, CT 06511
Tel. (203) 777-4425
Fax (203) 776-3965
Lchimes@garrisonlaw.com

*Counsel to Robert Noia, Creditor*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DJK Residential LLC, et al., | ) | Case No. 08-10375 (JMP) |
| | ) | |
| Debtors. | ) | Jointly Administered |

_____ )

### OBJECTION OF ROBERT NOIA TO CONFIRMATION OF PLAN OF REORGANIZATION DATED JANUARY 28, 2008, AND TO DEBTORS' DISCLOSURE STATEMENT

Robert Noia **("Noia"),** a creditor of Sirva, Inc. **("Sirva")** and Sirva Relocation, LLC

**("Sirva Relocation")**, two of the sixty-one (61) debtors whose cases are being jointly

administered as above-captioned cases **(collectively, the sixty-one (61) debtors are**

**referred to hereinafter as the "Debtors")**, by and through his counsel, Garrison, Levin-

Epstein, Chimes & Richardson, P.C., pursuant to 11 U.S.C. §§ 1122, 1125, 1128, 1129,

and Fed. R. Bankr. P. 3015, 3017 and 9014, hereby objects to confirmation of the

Debtors' Plan of Reorganization dated January 28, 2008 **(the "Plan")** and to the

adequacy of the Debtors' Disclosure Statement, and in support thereof respectfully

represents as follows:

## I.  INTRODUCTION

1.  Noia objects to the confirmation of the Debtors' Plan because the Plan (a) impermissibly classifies unsecured claims; (b) discriminates unfairly against holders of Class 5 claims; and (c) impermissibly calls for the substantive consolidation of the Debtors' estates.

2.  Debtors emphasized in their first day motions that these cases are "prepackaged," and that the plan had "overwhelming" support by all constituencies entitled to vote. Debtors thereby suggested a lack of significant creditor opposition to the Plan. The Plan, however, is not consensual and relies upon the cramdown provisions of 11 U.S.C. § 1129(b) for confirmation.

3.  Unlike a typical prepackaged plan, Debtors propose here to pay the holders of general unsecured claims (**"Class 5 Claims"**) nothing.

4.  The Plan divides unsecured claims into two groups: Class 4 and Class 5. Class 4 Claims are held by creditors with whom the Debtors "continue to do business." Class 4 Claims are to be paid in full. Class 5 "general unsecured claims," on the other hand, are to be paid nothing. Class 5 Claims include all unsecured claims other than Class 4 claims and the unsecured claims of Debtors' Pre-Petition Lenders, whose unsecured claims are separately classified and treated far more favorably.

5.  Debtors' repeated statement that the Proposed Plan is supported by "all classes entitled to vote on the plan" is true only because holders of Class 5 Claims are deemed to reject the Proposed Plan and are not entitled to vote.

6.  Holders of Class 5 Claims are as entitled as the holders of any other unsecured claims to reap the value of unencumbered assets and of the reorganized Debtors' ongoing operations.

7.   In addition, the Plan calls for the substantive consolidation of the estates of sixty-one (61) Debtors. Noia has insufficient knowledge or information upon which to form a belief as to the propriety of substantive consolidation of the estates and leaves the Debtors to their proof with respect to substantive consolidation.

8.   Noia therefore respectfully requests that the Court deny confirmation of the Plan.

9.   In addition, Noia objects to the Debtors' Disclosure Statement because it does not contain adequate information, especially concerning the Debtors' request that the Court substantively consolidate the Debtors' sixty-one (61) bankruptcy estates.

10. Noia therefore respectfully requests that the Court enter an order disapproving the Disclosure Statement.


## II.  STATEMENT OF FACTS

### A. Background

This Objection is based upon the following facts largely as admitted in various pleadings filed by the Debtors or as alleged by the Official Committee of Unsecured Creditors **(the "Committee")** in the Objection Of The Official Committee Of Unsecured Creditors To Motion Of The Debtors For Interim And Final Orders (A) Authorizing Debtors To Obtain Postpetition Secured Financing And Utilize Cash Collateral; (B) Granting Adequate Protection To Pre-Petition Secured Lenders; And (c) Scheduling Final Hearing, dated February 27, 2008.

11. Upon information and belief, there are sixty-one individual debtors, each of which commenced a chapter 11 case on February 5, 2008 **(the "Petition Date").**

12. Noia is a former employee of Sirva. Before the Petition Date, Noia commenced a lawsuit against Sirva and Sirva Relocation seeking damages for failure to pay wages due, breach of contract, and common law violations based on the refusal of Sirva to pay commissions, overrides and a bonus owed to him, and wrongful discharge. The lawsuit is pending in the United States District Court for the District of Connecticut. The amount of Noia's claim is unliquidated, but Noia estimates that the amount of his claim is at least $460,000.00.

13. The Debtors have filed nothing meaningful with the Court describing the various roles played by the multitude of Debtors in the enterprise.

14. The Debtors also have not filed anything with the Court even estimating what obligations any individual debtor might have other than to its lenders. In the aggregate, Debtors have stated that they have book liabilities exceeding $1.2 billion, and assets having a book value in excess of $900 million.

15. Upon information and belief, the Debtors are a leading provider of relocation and moving services to corporations, government agencies, and individual customers around the world. Debtors' relocation services businesses **(collectively, "Relocation Services")** provide employee relocation services to over one thousand corporate clients and government units. Upon information and belief, Debtors are also a world leader in moving household and other goods directly on behalf of individual customers through their moving services business **(collectively, "Moving Services")**. Upon information and belief, Moving Services is divided between (a) Moving Services North America and (b) Moving Services Europe and Asia Pacific. Collectively, Moving Services operates in approximately forty-five (45) countries.

16. Upon information and belief, in the twelve months ended September 30, 2007, the aggregate annual revenues of Debtors' continuing operations, including their non-Debtor International affiliates, exceeded $4.0 billion. Upon information and belief, Debtors' international operations are significant – Debtors apparently have over 1,400 employees working outside of the United States.

**B. The Pre-Petition Debt**

17. Upon information and belief, some of the Debtors are parties to a $511.0 million senior credit facility **(the "Pre-Petition Credit Facility")** through SIRVA Worldwide, Inc. **("SIRVA Worldwide")**, one of the Debtors herein. Upon information and belief, the related credit agreement with JPMorgan Chase Bank, N.A. and the other Pre-Petition Lenders consists of a $175.0 million revolving credit facility and a $336.0 million term loan obligation **(i.e., the "Pre-Petition Debt.")**.

18. Debtors assert that the Pre-Petition Debt is collateralized by substantially all of the assets of SIRVA Worldwide, SIRVA, and "certain" of SIRVA Worldwide's direct and indirect domestic subsidiaries. (Upon information and belief, as such, certain of Debtors apparently are not obligated on the Pre-Petition Debt.) Upon information and belief, Debtors' foreign affiliates are not debtors in these chapter 11 cases, and Debtors have not sought to initiate insolvency or similar proceedings with respect to their foreign affiliates in any non-U.S. jurisdiction.

19. Upon information and belief, one of Debtors' most valuable assets appears to be their equity interests in certain foreign subsidiaries. As to such equity, Debtors acknowledge that 35% is free and clear of the liens of the Pre-Petition Lenders **(the "Excluded Equity")**.

**C. The Plan**

20. On the Petition Date, Debtors filed with this Court, among other pleadings, the Plan. Debtors claim that the Plan is the product of "arduous and productive negotiations between the Debtors and their secured lenders to match the Debtors' capital structure with the Debtors' present operations and prospects, and the Plan has received the overwhelming support of all participants in these negotiations."

21. The Plan, with no explanation whatsoever, provides for the substantive consolidation of all sixty-one (61) Debtors.

22. No effort is made in either the Plan or the accompanying Disclosure Statement to identify which of the Debtors are obligated on which unsecured claims.

23. No meaningful effort is made in the Proposed Plan or accompanying Disclosure Statement to identify which Debtors own what assets.

24. The Plan divides non-Pre-Petition Lender unsecured claims into two classes: Class 4 and Class 5.

25. Class 5 is defined to include the claims of unsecured creditors "with whom the Debtors have ceased ongoing business relationships." Class 5 Claims get nothing and are extinguished. As a result Class 5 Claims are impaired. Class 5 Claims are deemed to have rejected the Plan.

26. Class 4 is generally defined as those unsecured creditors that are not relegated into Class 5. The claims of Class 4 creditors are paid in full.

27. Given the identifying criteria, whether a creditor falls within Class 4 (and gets paid) or Class 5 (and gets nothing) is dependent completely upon the election of the Debtors. The classification is also apparently fluid, as Debtors do not preclude themselves from modifying their decision to do or not to do business with a given creditor.

28. According to the Disclosure Statement, the going concern value of Debtors' entire enterprise (including foreign operations) is between $284 and $344 million. No attempt is made to value individual Debtors or to explain how such aggregate value was derived. In any event, the Pre-Petition Lenders would have a large unsecured claim under this standard. The Pre-Petition Lenders' unsecured claim (**"the Lender's Unsecured Claim"**) is not classified with the unsecured claims of other creditors. Rather, the Pre-Petition Lenders are permitted to convert their secured and unsecured claims into all of the new equity in the Reorganized Debtors (while Class 5 Claims take nothing).

29. Noia leaves the Debtors to their proof concerning the basis for, and propriety of, the separate classifications and disparate and discriminatory treatment of unsecured creditors.

30. Debtors' officers, directors and employees receive estate and creditor releases.

# III. OBJECTIONS

## A. The Plan Impermissibly Classifies Unsecured Claims

**31.** The classification of the nonpriority unsecured claims into three separate classes is impermissible under 11 U.S.C. § 1122. "One of the cardinal principles underlying bankruptcy law is equality of treatment of similarly situated creditors." 7 L. King, *Collier on Bankruptcy* ¶ 1122.03 (15th ed. Rev. 2007)(citations omitted).

**32.** 11 U.S.C. § 1129(a)(1) provides:

> (a) The court shall confirm a plan only if all of the following requirements are met:
>
> > (1) The plain complies with the applicable provisions of this title.

**33.** Classifying unsecured creditors separately on the basis that the favored class has an interest in doing business with the debtor in the future, and the disfavored class does not have such an interest, "cannot serve as a justification for separate classification." *One Times Square Assoc. L.P. v. Banque Nationale De Paris (In re One Times Square Assoc. L.P.)*, 165 B.R. 773, 778 (S.D.N.Y. 1994), *aff'd without reported opinion,* 41 F.3d 1502 (2d Cir.1994), *cert. denied*, 513 U.S. 1153 (1995).

**34.** Even if the Court were to hold that separate classification is permissible in some circumstances, the Debtors "must adduce credible proof of a legitimate reason for separate classification of similar claims." *Boston Post Road L.P. v. FDIC (In re Boston Post Road L.P.)*, 21 F.3d 477, 483 (2d Cir. 1994), *cert. denied*, 513 U.S. 1109 (1995); *In re 222 Liberty Associates*, 108 B.R. 971, 991 (Bankr. E.D. Pa. 1990). It is improper to separately classify trade creditors in Class 4 who are not "essential to [the debtor's] future." *Id.; Barakat v. Life Ins. Co. of Va. (In re Barakat)*, 99 F.3d 1520, 1528-29 (9th Cir. 1996), *cert. denied*, 520 U.S. 1143 (1997), *rehearing denied,* 520 U.S. 1225 (1997).

**35.** Noia leaves the Debtors to their proof concerning the classification and treatment of members of Class 4 and Class 5, and the Lender's Unsecured Claim, and reserves the right to brief and argue (a) that members of each class are not sufficiently different to merit separate classification and disparate treatment, (b) that an insufficient number of the members of Class 4 are necessary to the Debtors' ongoing business operations to merit separate classification of the entire body of Class 4 claimants, and (c) that particular creditors are improperly classified as members of Class 4.

**36.** Because the Plan does not classify claims in accordance with 11 U.S.C. § 1122, the Plan is not confirmable under 11 U.S.C. § 1129(a)(1).

### B. The Plan Discriminates Unfairly Against Holders Of Class 5 Claims

37. The Debtors seek cramdown under 11 U.S.C. § 1129(b).

38. Pursuant to the Plan and Disclosure Statement, Class 5 has been deemed to reject the Plan. Accordingly, 11 U.S.C. § 1129(a)(8) is not satisfied in this case. Therefore, the only means for

the Debtors to obtain confirmation of the Plan is to invoke and satisfy the cramdown provisions of

11 U.S.C. § 1129(b).

39. 11 U.S.C. § 1129(b)(1) provides:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to the plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

40. Pursuant to 11 U.S.C. § 1129(b)(1), the Plan cannot be confirmed because it

discriminates unfairly against holders of Class 5 Claims. The unfair discrimination test goes to the

treatment of Class 5 Claims in comparison to the treatment of Class 4 Claims and the treatment of

the Lender's Unsecured Claim, as opposed to the propriety of separate classification.

41. "[A] rebuttable presumption of unfair discrimination arises when there is:

> (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution.

*In re Armstrong World Indus., Inc.,* 348 B.R. 111, 121-22 (D. Del. 2006), *quoting*, *In re Dow

Corning Corp.,* 244 B.R. 696, 702 (Bankr. E.D. Mich.1999).

42. All of the elements necessary for applying the rebuttable presumption of unfair discrimination are present here: (1) Class 5 dissents; (2) Class 4 and the Lender's Unsecured Claim are other classes of the same priority as Class 5; and (3) Class 5 Claimants will recover materially less than Class 4 Claimants and the Lenders: Class 4 Claimants will be paid 100% on account of their claims, and the Lenders will receive stock, while Class 5 Claimants will be paid 0%.

43. The Debtors have the burden of rebutting the presumption of unfair discrimination. *In re Armstrong World Indus., Inc.,* 348 B.R. 111, 122 (D. Del. 2006). The only way for the Debtors to rebut the presumption of unfair discrimination is to show either that Class 5 claimants would have a lower priority than Class 4 Claims and the Lender's Unsecured Claim outside of bankruptcy, or that Class 4 claimants and the Lenders have given new value to the reorganized Debtors which value offsets the gain they have achieved under the Plan. *Id.* at 121.

44. In this case, the Debtors cannot rebut the presumption that the Plan discriminates unfairly against Class 5 members because (a) outside of bankruptcy Class 4, the Lender's Unsecured Claim and Class 5 claimants would be treated as of equal rank in priority, and (b) there has been no allegation that Class 4 claimants or the Lenders (on account of their unsecured claim) have given anything of value to the Debtors during this short reorganization case.

45. Even without applying the rebuttable presumption analysis the Plan discriminates unfairly against Class 5. Explaining its rejection, on grounds of unfair discrimination, of a plan that gave favored treatment to trade creditors over the deficiency claim of an undersecured mortgagee, one bankruptcy court noted:

> "Generally speaking, [the prohibition of unfair discrimination] ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes (citations omitted).
>
> "Thus a plan proponent may not segregate two similar claims or groups of claims into separate classes and provide disparate treatment for those classes."
>
> . . . Separately classified but similarly situated creditors must be treated equally.

*In re 222 Liberty Associates*, 108 B.R. 971, 990-91 (Bankr. E.D. Pa. 1990), *quoting, In re Johns-Manville Corp.,* 68 B.R. 618, 636 (Bankr.S.D.N.Y.1987), *aff'd,* 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom. Kane v. Johns-Manville Corp.,* 843 F.2d 636 (2d Cir.1988).

46. Class 5 Claimants and Class 4 Claimants are treated as unequally as imaginable, 0% compared to 100%. Class 5 Claimants and the Lenders also are treated unequally: 0% compared to stock.

47. For all of the reasons set forth above, the Plan discriminates unfairly against Class 5 Claimants, does not satisfy 11 U.S.C. § 1129(b)(1), and therefore cannot be crammed down over the dissent of Class 5 Claimants.

**48.** Accordingly, confirmation of the Plan should be denied.

**C. The Plan Impermissibly Calls For The Substantive Consolidation Of The Debtors' Estates.**

49. The Debtors seek substantive consolidation, as well as an order that they not be required to file schedules.

**50.** Based on the Disclosure Statement, it is impossible for Noia to evaluate the effect that substantive consolidation will have on his recovery in this case. There is no statutory basis for substantive consolidation, but the doctrine has evolved in various forms in numerous court decisions. Without specific allegations setting forth the basis for substantive consolidation and its effect on creditors, it is impossible for Noia to argue what legal standards are applicable, how those standards apply to this case, and whether or not the Debtors' sixty-one (61) estates should be substantively consolidated. *See, generally*, L. King 2 *Collier On Bankruptcy*, ¶ 15.09[2] (15th ed. Rev. 2007)(setting forth the myriad of standards and elements adopted by the courts).

**51.** Accordingly, Noia reserves the right to brief and argue that substantive consolidation is inappropriate based upon the evidence adduced at trial or a detailed set of allegations concerning the same.

### D. The Disclosure Statement Does Not Contain Adequate Information

**52.** In addition, and for the reasons set forth above, the Disclosure Statement does not contain adequate information pursuant to 11 U.S.C. § 1125.

**53.** Noia is an "investor typical of holders of claims or interests" of Class 5, within the meaning of 11 U.S.C. § 1125(a)(2).

**54.** The abject failure of the Debtors to make financial disclosures that would permit creditors to determine the effects of substantive consolidation renders the Disclosure Statement inadequate, in that it does not contain "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the

debtor's books and records ... that would enable ... a hypothetical investor of the relevant class to make an informed judgment about the plan...[.]" 11 U.S.C. § 1225(a)(1).

**55.** Therefore, the Disclosure Statement should be disapproved. A hearing on confirmation of the Plan should not be held until such time as an approved Disclosure Statement containing adequate information has been circulated to Noia, or in the alternative, a motion for substantive consolidation containing sufficient allegations has been served upon Noia, to permit him to evaluate the merits of the Debtors' demand for substantive consolidation.

## IV. WAIVER OF MEMORANDUM OF LAW

56. Pursuant to Local Rule 9013-1(b), because there are no novel issues of law presented herein, Noia respectfully requests that the Court waive the requirement that Noia file a memorandum of law in support of this Objection.

## V. CONCLUSION

57. For all of the foregoing reasons, Noia respectfully requests that the Court deny confirmation of the Plan.

Dated: New Haven, Connecticut

March 10, 2008                                        ROBERT NOIA


                                        BY:     */s/ Lewis H. Chimes*
                                                Lewis H. Chimes
                                                (SDNY: LC2409)
                                                GARRISON, LEVIN-EPSTEIN, CHIMES
                                                    & RICHARDSON, P.C.
                                                405 Orange Street

New Haven, CT 06511
Tel. (203) 777-4425
Fax (203) 776-3965
*lchimes@garrisonlaw.com*

*Counsel to Robert Noia, Creditor*

**Certification of Service**

I hereby certify that the foregoing has been filed electronically on this 10th day of March, 2008. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's CM/ECF System.

This is to further certify that on this 10th day of March, 2008, a copy of the foregoing was served via Federal Express, postage prepaid, upon the parties listed on **Exhibit A**, attached hereto, and upon:

Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
Attention: Marc Kieselstein, P.C.

Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
Attention: Adam C. Paul

Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
Attention:  Scott R. Zemnick

Simpson Thatcher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017

Attention: Peter V. Pantaleo

Office of the United States Trustee for the Southern District of New York
33 Whitehall Street, 21st Floor
New York, New York, 10004
Attention: Paul K. Schwartzberg


Diana G. Adams, United States Trustee
33 Whitehall Street, Suite 2100
New York, New York 10004

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 36th Floor
New York, New York, 10017
Attention: Brad R. Godshall

Sirva, Inc.
700 Oakmont Lane Westmont, IL 60559
Attention: President/Managing Agent/General Agent

Sirva Relocation, LLC
6070 Parkland Boulevard Mayfield Heights, OH 44124
Attention: President/Managing Agent/General Agent

*/s/ Lewis H. Chimes*
Lewis H. Chimes

## EXHIBIT A

**Peter J. Roberts**
Shaw Gussis Fishman Glantz
Wolfson & Towbin, LLC
321 North Clark Street, Suite 800
Chicago, IL 60610
*(Abbott Laboratories)*

**Larry A. Levick**
Singer & Levick, P.C.
16200 Addison Road, Suite 140
Addison, TX 75001
*(Affiliated Computer Services, Inc.)*

**Henry M. Karwowski**
Trenk, DiPasquale, Webster, Della Fera
347 Mt. Pleasant Avenue, Suite 300
West Orange, NJ 07052
*(Center Point IV)*

**John P. Dillman**
Linebarger Goggan Blair & Sampson, LLP
1301 Travis Street, Suite 300
P.O. Box 306
Houston, TX 77253
*(Cypress Fairbanks ISD)*

**Marilyn Simon**
Marilyn Simon & Associates
110 East 59th Street
23rd Floor
New York, NY 10022
*(Daryl Flood, Inc.)*

**Michael Luskin**
Luskin, Stein & Eisler, LLP
330 Madison Avenue, Suite 3400
New York, NY 10017
*(Donald J. Beach, Scott Hansen, Jeffrey L. Stoloff, Burnetta M. Nimons,*
 *Thomas P. Scholtens, and Natalie Hutt f/k/a Natalie Trueworthy,*
 *individually and on behalf of all other similarly situated)*

**Joseph R. Sgroi**
Honigman Miller Schwartz and Cohn, LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
*(General Motors Corporation)*

**Elizabeth Banda**
Perdue, Brandon, Fielder, Collins & Mott, L.L.P.
P.O. Box 13430
Arlington, TX 76094-0430
*(Grapevine-Colleyville ISD)*

**Eric S. Prezant**
Bryan Cave, LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
*(Griffin Capital Corporation)*

**John P. Dillman**
Linebarger Goggan Blair & Sampson, LLP
1301 Travis Street, Suite 300
P.O. Box 306
Houston, TX 77253
*(Harris County)*

**Peter J. Roberts**
Shaw Gussis Fishman Glantz Wolfson & Towbin, LLC
321 North Clark Street, Suite 800
Chicago, IL 60610
*(Hospira, Inc.)*

**Frank McGinn**
Bartlett Hackett Feinberg, P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
*(Iron Mountain Information Management, Inc.)*

**Jill Mazer-Marino**
**Thomas R. Slome**
Rosen Slome Marder, LLP
333 Earle Ovington Boulevard, Suite 901
Uniondale, NY 11553
*(Jersey Central Power & Light Company)*
*(Salt River Project)*
*(The Cleveland Electric Illuminating Company)*
*(The Commonwealth Edison Company)*

**David W. Dykhouse**
Patterson, Belknap, Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY 10036-6710
*(Johnson & Johnson)*

**Brian Krakauer**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
*(LaSalle Bank National Association)*

**Kurtzman Carson Consultants**
2335 Alaska Avenue
El Segundo, CA 90245

**Kurtzman Carson Consultants, LLC**
5301 Beethovan Street, Suite 102
Los Angeles, CA 90066

**Michael S. Fox**
Olshan Grundman Frome Rosenzweig & Wolosky, LLP
Park Avenue Tower
65 E. 55th Street
New York, NY 10022
*(MLF Investments, LLC)*

**Madeleine C. Wanslee**
Gust Rosenfeld, P.L.C.
201 East Washington Street, Suite 800
Phoenix, AZ 85004-2327
*(Maricopa County Treasurer)*

**Steven A. Ginther**
Missouri Department of Revenue
General Counsel's Office
P.O. Box 475
Jefferson City, MO 65105-0475
*(Missouri Department of Revenue)*

**Judith Lynne Cohen**
Office of Counsel, NYS Department of Taxation and Finance
1740 Broadway
New York, NY 10019
*(New York State Department of Taxation and Finance)*

**Robert J. Feinstein**
**Ilan D. Scharf**
Pachulski Stang Ziehl & Jones, LLP
780 Third Avenue, 36th Floor
New York, NY 10017-2024
*(Official Committee of Creditors Holding General Unsecured Claims)*

**Brad Rogers**
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C. 20005-4026
*(Pension Benefit Guaranty Corporation)*

**Diane W. Sanders**
Linebarger Goggan Blair & Sampson, L.L.P.
P.O. Box 17428
Austin, TX 78760
*(Round Rock ISD)*

**Trey Monsour**
Haynes and Boone, LLP
901 Main Street, Suite 3100
Dallas, TX 75202
*(Sysco Corporation)*


The Official Committee of Unsecured Creditors of 360networks (USA) Inc., et al
and 360networks (USA), Inc., by and through The Official Committee of
Unsecured Creditors of 360networks (USA) Inc.
**Drier LLP**
499 Park Avenue
New York, New York 10022

**Robert E. Nies**
Wolff & Samson, PC
The Offices at Crystal Lake
One Boland Drive
West Orange, NJ 07052
*(Triple Net Investments IX, LP)*

**Ira L. Herman**
Thompson & Knight, LLP
919 Third Avenue, 39th Floor
New York, NY 10022
*(Veritext, LLC)*
*(Victory Packaging, LP)*