UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

DJK RESIDENTIAL LLC, et al.,

Debtors.

Chapter 11

Case No. 08-10375 (JMP)

Jointly Administered

---

# CLASS ACTION ANTITRUST
# PLAINTIFFS' OBJECTION TO CONFIRMATION

## Preliminary Statement

Donald J. Beach, Scott Hansen, Jeffrey L. Stoloff, Burnetta Nimons, Thomas Scholtens, and Natalie Hutt, f/k/a Natalie Trueworthy, individually and on behalf of all others similarly situated (the "Class Action Antitrust Plaintiffs") object to confirmation of the Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (docket no. 31) (the "Proposed Plan"). In summary, the Class Action Antitrust Plaintiffs' objections are:

   A.   *1129(a)(1). Gerrymandered Classification.* The classification system used here, specifically the division of unsecured creditors into three classes – Class 4 paid in full claims, Class 5 take nothing claims, and Class 6 intercompany paid in full claims – is undertaken purely to generate accepting, unimpaired status for all claims but those in Class 5, which is then deemed to reject the plan.

   B.   *1129(b)(1). Unfair Discrimination.* The Proposed Plan unfairly discriminates against Class 5 by placing these unsecured claims in a class separate and apart from Classes 4 and 6, general unsecured and intercompany claims, and impairing them to the maximum extent possible: they are to be paid nothing and are presumed to reject the plan as a class. This unfair discrimination does not meet the requirements of 11 U.S.C. § 1129(b), the Proposed Plan cannot be crammed down on class 5, and therefore it cannot be confirmed.

   C.   *Lack of Fair and Equitable Treatment.* The Proposed Plan is not fair and equitable to Class 5, in that claims of the same priority (Class 4 – Unsecured Ongoing Operations Claims – and Class 6 – Intercompany

Claims) are paid in full, while Class 5 is to receive nothing. Further, Class 8 – Intercompany Equity Interests – a class junior to Class 5 in terms of absolute priority – remains unimpaired while Class 5 is to take nothing under the Proposed Plan.

D. *1129(a)(10)*. The Proposed Plan appears to have been negotiated closely with the Agent and members of Class 1, the Debtors' prepetition major secured creditors (the "Prepetition Lenders"), the only impaired class to vote to accept the plan. The Class Action Antitrust Plaintiffs have not had an opportunity to complete formal discovery and other fact finding, but believe that the members of Class 1 may be properly characterized as "insiders" as defined in 11 U.S.C. § 101(31). If this is the case, the Proposed Plan does not meet the requirements of 11 U.S.C. § 1129(a)(10) and cannot be confirmed.

As a result, confirmation of the plan should be denied if in fact there is no non-insider impaired accepting class and if the Proposed Plan is not modified to cure the gerrymandered classification of unsecured claims and the unfair discrimination and lack of fair and equitable treatment of Class 5.

Additionally, the Class Action Antitrust Plaintiffs object to plan confirmation based upon the procedure and process that the Debtors have employed in this case. The Debtors filed their petitions for bankruptcy relief on February 5, 2008, and sought and obtained a scheduling order from this Court, which set the objection deadline for confirmation for March 11, and scheduled a confirmation hearing to take place on March 21.[1] The schedule described above might be appropriate for a truly consensual prepackaged or prenegotiated chapter 11 case, but not here, where the Debtors seek to pay nothing to Class 5 claimants under a plan to which these claimants have not consented and will not be afforded an opportunity to reject, while paying other, similarly situated unsecured claimants in full.

The Disclosure Statement for the Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (Docket No. 32) (the "Proposed

---

[1] The confirmation hearing was later rescheduled for April 18 after vigorous objections to this schedule were received from the Official Committee of Unsecured Creditors and others. However, the objection deadline remains the same for all parties in interest who did not otherwise stipulate with the Debtors to extend this deadline.

Disclosure Statement") filed by the Debtors with the Proposed Plan on the petition date is devoid of specifics regarding the Debtors' assets and liabilities, all of which are described only in vague generalities, apparently on the theory that since only Class 1 is entitled to vote, no other class is entitled to disclosure.

The Debtors have failed to file their schedules and statement of financial affairs, have not set a bar date for claims to be established, and apparently intend to base distributions solely upon the Debtors' books and records. This approach ignores the Debtors' affirmative obligation to show that the plan is feasible and otherwise confirmable. *Cf. In re Laurel Glen Apartments,* 139 B.R. 199, 201 (Bankr. S.D. Ohio 1991) (". . . counsel for the plan proponent should speak to each subsection of § 1129(a)"). There is no way to test the feasibility of the Proposed Plan without a census of claims. Further, the Proposed Disclosure Statement does not provide notice or an opportunity for creditors to object to confirmation on the grounds that the plan does not meet the requirements of 11 U.S.C. § 1129.

Under the scheduling order, the Debtors, who bear the burden of proof and persuasion at confirmation, are not required to prepare an opening brief or present evidence; rather, they will proceed to respond to objections raised by parties-in-interest – the same parties to which the Proposed Plan and Proposed Disclosure Statement provide essentially no disclosure of underlying facts. This process places the burden on creditors to challenge the Proposed Plan and proposed Disclosure Statement and is highly prejudicial to Class 5 creditors like the Class Action Antitrust Plaintiffs, who are to receive no distributions under the Proposed Plan. As a result, the process employed by the scheduling order should be considered outside the proper scope of the authority it is based upon – 11 U.S.C. § 105(a). Rather than "carrying out the provisions of" the Bankruptcy Code, these procedures have subverted and undermined every aspect of the reorganization process, which is based upon full and fair disclosure and a plan proponent's

affirmative duty to come forward and show how its plan meets the requirements of Title 11 while affording objecting parties a full and fair opportunity to challenge that showing.

## Facts

### A. The Debtors' Plan and Disclosure Statement

The Debtors have proposed a secured-creditor-led restructuring that will: (1) wipe out old equity and old unsecured creditors that the Debtors do not plan on doing business with in the future; and (2) issue new equity to the former primary secured creditor group, Class 1. A group of secured creditors, led by the same Agent as the pre-petition secured creditors, will provide interim debtor-in-possession financing and exit financing to allow for the Debtors' postpetition operations and financial health.

The Debtors acknowledge as much. According to their Proposed Disclosure Statement, the primary purpose of the Proposed Plan is to effectuate a restructuring of the Debtors' obligations by:

> (a) The aggregate amount of 2008 Revolving Loans, 2008 Reimbursement Obligations and the New Term Loans (as defined in the Pre-Petition Credit Agreement) shall be paid in full with proceeds of the DIP Facility upon the entry of an interim order by the Bankruptcy Court approving the DIP Facility. All 2008 Letters of Credit will be replaced by DIP letters of credit. On the Effective Date, subject to the terms of the DIP Facility, the aggregate outstanding amount under the DIP Facility will be converted to loans outstanding under the Exit Facility and all DIP Letters of Credit and undrawn letters of credit issued under the Pre-Petition Credit Agreement will be rolled into the Exit Facility.

> (b) On the Effective Date, the aggregate outstanding principal amount of Term Loans and Revolving Loans (as each such term is defined in the Pre-Petition Credit Agreement (other than 2008 Revolving Loans, the 2008 Reimbursement Obligations and the New Term Loans; collectively, the "Pre-Petition Loans")) and the interest accrued and unpaid on the Pre-Petition Loans through the Effective Date (collectively, the "Accrued Interest"), in the aggregate amount of $200 million will be restructured into a new second lien term loan facility (the "Second Lien Facility");

> (c) The Prepetition Lenders shall convert that portion of the aggregate Pre-Petition Obligations (as defined in the Restructuring Term Sheet) which is not

repaid by the DIP/Exit Credit Facility or restructured under the Second Lien Facility into not less than 75% (subject to dilution by the Management Incentive Plan) of the New Common Stock of the Reorganized Debtors issued on the Effective Date under the Plan, with such New Common Stock to be distributed on a Pro Rata basis in accordance with the Lenders' holdings of such Pre-Petition Obligations;

    (d)    Upon and after the Effective Date (defined below), the Plan provides for a distribution of New Common Stock or Cash to Holders of Claims entitled to distributions under the Plan; and

    (e)    Creditors holding Class 5 claims – defined as unsecured claims "arising with an Entity with whom the Debtors have ceased ongoing business relationships" – are to receive no distributions under the plan, although other general unsecured creditors in Classes 4 (Unsecured Ongoing Operations Claims) and 6 (Intercompany Claims) are treated as unimpaired and will be paid in full, and class 8 (Intercompany Equity Interests) are also to be treated as unimpaired.

### B. The Class Action Antitrust Plaintiffs' Claims

On March 19, 2007, *Beach, et al. v. Atlas Van Lines, et al.*, C.A. No. 2:07-764, was filed in the United States District Court for the District of South Carolina, Charleston Division. The class action Complaint states two causes of action against a number of defendants, including SIRVA, Inc., SIRVA Worldwide, Inc., North American Van Lines, Inc. and Allied Van Lines, Inc., all of which are also Debtors in these cases. The first cause of action is for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The second seeks damages under 49 U.S.C. § 14704(b) for rates charged in excess of the applicable rate for transportation or service contained in a tariff published under 49 U.S.C. § 13702. The factual underpinnings for the causes of action center on a conspiracy between the named moving company defendants and others unknown, as well as the trade association of which all are members, to illegally set and charge to residential moving customers fuel surcharges greatly in excess of the actual cost of fuel used for each customer's move.[2] The Complaint seeks certification of a class which includes:

---

[2] The Class Action Antitrust Plaintiffs' claims are described in detail in the 28-page *Beach* Complaint, which is attached as Exhibit A.

> All individuals or entities (excluding governmental entities, Defendants, and Defendants' parents, predecessors, subsidiaries, affiliates, agents and Defendants' co-conspirators) who purchased Household Goods Moving Services for interstate shipments directly from any of the Defendants, and Defendants' co-conspirators or, Defendants' predecessors, subsidiaries, affiliates or agents, at any time during the period within four years prior to the filing of this action.

On May 4, 2007, *Moad, et al. v. Atlas Van Lines, et al.*, N.D. Illinois, C.A. No. 1:07-2506 was filed. The *Moad* complaint is nearly identical to the *Beach* complaint in its pleading of the allegations under the Sherman Act and 49 U.S.C. § 14704(b). It also asserts additional causes of action: 1) 18 U.S.C. § 1962(c) – RICO; and 2) 18 U.S.C. § 1962(d) – RICO; 3) Breach of a Contractual Duty of Implied Duty of Good Faith and Fair Dealing under Illinois law; 4) Consumer Fraud and Deceptive Business Practice Act under Illinois state law; and 5) Unjust Enrichment under Illinois state law. It too seeks class certification and the class is defined in identical terms to those used in *Beach*, except as to the final words describing the period covered by the class. The defendants named in *Moad* are identical to those named in *Beach*.

The *Beach* Defendants filed a variety of motions to dismiss on June 8, 2007, including a Joint Motion to Dismiss by all Defendants. In response to some of the motions, the *Beach* Plaintiffs voluntarily dismissed all claims against Atlas World Group, Inc., SIRVA, Inc., SIRVA Worldwide, Inc.,[3] Unigroup, Inc., and Bekins Van Lines, LLC. The *Beach* Plaintiffs also voluntarily dismissed their claims in Count II of the Complaint against the American Moving and Storage Association, Inc. The Joint Motion to Dismiss, which seeks dismissal of the Complaint in its entirety, remained for determination by the Court.

On August 16, 2007, the Judicial Panel on Multidistrict Litigation determined that the *Beach* and *Moad* actions should be assigned to a single judge for coordinated or consolidated

---

[3] Although SIRVA, Inc. and SIRVA Worldwide, Inc. were dismissed from the action without prejudice, the claims against their subsidiaries North American Van Lines, Inc. and Allied Van Lines, Inc. continue.

pretrial proceedings. *See In re Household Goods Movers Antitrust Litigation*, MDL No. 1865, 502 F. Supp.2d 1356 (J.P.M.L. 2007). Accordingly, the MDL Panel transferred the *Moad* action to the District of South Carolina on September 9, 2007, where it was assigned civil action number 2:07-2861. Prior to the transfer, on September 5, in conformity with voluntary dismissals previously filed in *Beach*, *Moad* Plaintiffs filed voluntary dismissals of all claims against Atlas World Group, Inc., SIRVA, Inc., SIRVA Worldwide, Inc.,[4] and Unigroup, Inc. and a portion of their complaint as to American Moving and Storage, Inc.

Oral argument on Defendants' Joint Motion to Dismiss was heard by the Honorable C. Weston Houck on October 23, 2007. At the conclusion of the hearing the matter was taken under advisement. To date a ruling has not been issued. When that ruling is issued, it will apply to the *Moad* causes of action under the Sherman Act and 49 U.S.C. § 14704(b). Counsel for the *Moad* Plaintiffs was present for the hearing and agreed in advance of the hearing to join in the briefs filed and arguments made by counsel for the *Beach* Plaintiffs.

Another nearly identical complaint, *Boone v. Atlas Van Lines, et al.*, N.D. Alabama, C.A. No. CV-07-CO-2269-S, was filed on December 14, 2007.[5] It was transferred to the District of South Carolina on February 8, 2008 and assigned civil action number 2:08-486. It includes four additional causes of action to those asserted in *Beach*: 1) 18 U.S.C. § 1962(c) – RICO; 2) 18 U.S.C. § 1962(d) – RICO; 3) Breach of a Contractual Duty of Implied Duty of Good Faith and Fair Dealing under Alabama state law; and 4) unjust enrichment under Alabama state law. It too seeks class certification, with the class defined in identical terms to those used in *Beach*, except as to the final words describing the period covered by the class. We believe that *Boone* will be

---

[4] Although SIRVA, Inc. and SIRVA Worldwide, Inc. were dismissed from the action without prejudice, the claims against their subsidiaries North American Van Lines, Inc. and Allied Van Lines, Inc. continue.

[5] The defendants named in *Boone* include North American Van Lines, Inc. and Allied Van Lines, Inc.

subject to the district court's ruling on the Joint Motion to Dismiss to the same extent as if the motion had been filed in that case.

The chart attached as Exhibit B summarizes the three actions, the Debtor defendants currently named in each, and the claims against each Debtor defendant. The complaints in the three actions do not specify the value placed on each of the causes of action, and the Class Action Antitrust Plaintiffs' claims are unliquidated.

<b><u>The Class Action Antitrust<br>Plaintiffs' Objections To Confirmation</u></b>

**A. CLASSIFICATION OF UNSECURED CREDITORS INTO THREE SEPARATE CLASSES IS IMPERMISSIBLE GERRYMANDERING PROHIBITED BY 11 U.S.C. §§ 1129(1) AND 1122**

Under section 1129(a)(1), a plan must comply with the applicable provisions of Title 11. The legislative history of this section explains that this embodies the requirements of sections 1122 and 1123, governing classification of claims and the contents of a plan. H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978). Here, although classes 4, 5, and 6 themselves consist of similar claims within each class, they also are similar in that they are all unsecured claims, across the classes. They have been classified separately so that classes 4 and 6 can be treated in an unimpaired manner, thus creating two unsecured classes that will be deemed to accept the plan. Class 5, which is to receive nothing under the proposed plan, is separately classified so that its rejections will not endanger or undermine acceptances of classes 4 and 6.

The Debtors' Proposed Plan violates the "one clear rule" on claims classification under 11 U.S.C. § 1122: "thou shall not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Matter of Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991). The Second Circuit has made it clear that "to warrant separate classification of similar claims, the debtor must advance a legitimate reason supported by

credible proof." *In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996). In filing their naked Proposed Plan and Proposed Disclosure Statement, the Debtors have not met this standard, nor can they: all general unsecured claims are of equal stature and right. The only reason to separately classify class 5 is to affect the vote tally and discriminate against a set of unsecured creditors – Class 5, including the Class Action Antitrust Plaintiffs - and in favor of the balance, classes 4 and 6.

### B. THE PLAN UNFAIRLY DISCRIMINATES AGAINST CLASS 5, FAILING TO SATISFY § 1129(b)

The Proposed Plan unfairly discriminates against Class 5 by placing these unsecured claims in a class separate and apart from classes 4 and 6, which are comprised of general unsecured and intercompany claims, and impairing the Class 5 claims to the maximum extent possible: they are to be paid nothing and are presumed to reject the plan as a class. This unfair discrimination does not meet the requirements of 11 U.S.C. § 1129(b) - the Proposed Plan cannot be crammed down on Class 5, and therefore it cannot be confirmed.

The prohibition on unfair discrimination requires that the Proposed Plan allocate value to each dissident class in a manner consistent with the treatment given to other classes with similar legal claims against the Debtors. Thus, the dissenting class must receive value equal to the value given to all other similarly situated classes. *In re Mcorp Fin., Inc.,* 160 B.R. 941, 960 (S.D. Tex. 1993). The prohibition on unfair discrimination "ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes . . . . Thus a plan proponent may not segregate two similar claims or groups of claims into separate classes and provide disparate treatment for those classes" *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (internal citations omitted); *see also* Kenneth N. Klee, *All You Ever Wanted to Know About Cram Down Under the Bankruptcy Code*, 53 AM. BANKR. L.J. 133, 142 (1979) ("In a nutshell, if the plan protects the legal rights of a dissenting class in a manner

9

consistent with the treatment of other classes whose legal rights are intertwined with those of the dissenting class, then the plan does not discriminate unfairly with respect to the dissenting class"). The Debtors' Proposed Plan does not meet these requirements and should not be confirmed.

This Court has utilized a four-part test to determine whether discrimination is impermissibly unfair. *See In re Buttonwood Partners, Ltd.,* 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); *see also Mercury Capital Corp. v. Milford Conn. Assocs., L.P.,* 354 B.R. 1 (D. Conn. 2006) (citing *Buttonwood*). Under the *Buttonwood Partners* test, the plan proponent must show that: (i) there is a reasonable basis for discriminating, (ii) the plan cannot be consummated without the discrimination, (iii) the discrimination is proposed in good faith, and (iv) the degree of discrimination is in direct proportion to its rationale. *Buttonwood Partners, supra.* (collecting cases). "[I]nability to reorganize without the discrimination in and of itself is not a legitimate basis for disparate treatment." *In re Crosscreek Apartments, Ltd.,* 213 B.R. 521, 538 n.21 (Bankr. E.D. Tenn. 1997). Here, the Debtors have not articulated valid reasons for the extreme discrimination that they are attempting to impose upon Class 5 creditors and cannot be found to have passed even one prong of the *Buttonwood Partners* test.

A more recent, and somewhat clearer, test is contained in *In re Quay Corporation, Inc.,* 372 B.R. 378, 385-386 (Bankr. N.D. Ill. 2007), which sets forth what is known as the "*Markell* test" to recognize a rebuttable presumption of unfair discrimination that arises when there is:

(1) a dissenting class;

(2) another class of the same priority; and

(3) a difference in the plan's treatment of the two classes that results in either:

(a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or

10

> (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution.

372 B.R. 378 at 386 (citing Bruce A. Markell, *A New Perspective on Unfair Discrimination in Chapter 11*, 72 AM. BANKR. L.J. 227 (1998)); accord, *In re Armstrong World Indus.,* 348 B.R. 111, 121-22 (D.Del. 2006).

Here, applying the *Markell* test, the presumption of unfair discrimination is met:

(1) Class 5 is deemed to be a dissenting class by operation of 11 U.S.C. §1126(g);

(2) Classes 4 and 6 are both classes of unsecured claims of the same priority;

(3) The difference in the plan's treatment of the three classes results in a materially lower percentage recovery for Class 5 (0%) than for classes 4 (100%) or 6 (100%).

When the *Markell* presumption arises, as it does here, it can only be rebutted "by showing that, outside of bankruptcy, the dissenting class would similarly receive less than the class receiving a greater recovery, or that the alleged preferred class had infused new value into the reorganization which offsets its gain." *Id*. Here, no such rebuttal can be made. Outside of bankruptcy, classes 4 and 5 would have equal rights against the Debtors and their property, as unsecured creditors, and Class 6 might even be subject to lesser rights under doctrines such as equitable subordination or recharacterization.

Plans that discriminate by dividing similarly situated claims into separate classes and then propose to make substantial or complete payments to one class, while making insubstantial or no payment to the class discriminated against, are disfavored and routinely denied confirmation. *See, e.g., In re Hoffinge Industries, Inc.*, 321 B.R. 498 (Bankr. E.D. Ark. 2005) (plan that separately classified litigation claims and proposed zero distribution apart from wasting insurance policy proceeds while other unsecured creditors were to receive 30% distributions was unconfirmable for unfair discrimination); *In re SV/Home Office, Inc.,* 2003 W.L. 23211575

11

(Bankr. M.D.N.C. 2003) (plan that separately classified unsecured litigation claims and proposed zero distribution to that class held unconfirmable for unfair discrimination); *see also In re Toy & Sports Warehouse, Inc.,* 37 B.R. 141, 151-52 (S.D.N.Y. 1984) ("the holder of a claim or interest may not be singled out and subjected to unfair and discriminatory treatment . . . . Nor may a plan give insiders the same priority as unsecured creditors").

The Proposed Plan here does not pass the *Buttonwood Partners* test and raises the *Markell* presumption of unfair discrimination, and the Debtors cannot overcome that presumption. It would award similarly situated creditors outside of bankruptcy the most widely disparate treatment possible: 100% payout for classes 4 and 6, with 0% for Class 5. Confirmation of the Debtors' Proposed Plan should thus be denied.

### C. THE PLAN IS NOT FAIR AND EQUITABLE, VIOLATING THE ABSOLUTE PRIORITY RULE UNDER § 1129(b)(2)(B)

The Proposed Plan is not fair and equitable to Class 5 as that term is defined in 11 U.S.C. § 1129(b)(2)(B). Class 6 – Intercompany Claims – which is arguably subordinate to but at least *pari passu* with general unsecured claims – is to be paid in full, while Class 5 is to receive nothing. Further, Class 8 – Intercompany Equity Interests – a class junior to Class 5 unsecured creditors in terms of absolute priority – remains unimpaired while Class 5 is to take nothing under the Proposed Plan. Under 11 U.S.C. § 1129(b)(2)(B), if a class of non-accepting unsecured creditors is not paid in full under the plan, no junior class may receive or retain anything under the plan.

As observed in *In re Iridium Operating LLC*, the absolute priority rule means that "any plan of reorganization in which stockholders [a]re preferred before . . . creditor[s], is invalid." 478 F.3d 452, 462-3 (2d Cir. 2007). Similarly, in *Securities and Exchange Commission v. American Trailer Rentals Co.,* the court stated that the "words 'fair and equitable' are 'words of art' which mean that senior interests are entitled to priority over junior ones." 379 U.S. 594, 611

(1965); *see also In re Armstrong World Indus., Inc.,* 320 B.R. 523, 533 (D.Del.), *aff'd* 432 F.3d 507 (3d Cir. 2005). Since the absolute priority rule is not met in the case of classes 6 and 8 with respect to Class 5, confirmation should be denied.[6]

### D. IF CLASS 1 IS COMPRISED OF INSIDERS, THE PROPOSED PLAN FAILS UNDER 11 U.S.C. § 1129(a)(10)

The Proposed Plan appears to have been negotiated closely with the Agent and members of Class 1, the Debtors' prepetition major secured creditors, the only impaired class to vote to accept the plan. While the Class Action Antitrust Plaintiffs have not had an opportunity to complete discovery and other fact finding, they believe that the Proposed Plan may not meet the requirements of 11 U.S.C. § 1129(a)(10) and therefore cannot be confirmed because Class 1 members appear to be "insiders" under 11 U.S.C. § 101(31). *See In re South Beach Securities, Inc.*, 376 B.R. 881 (Bankr. N.D. Ill. 2007) (denying confirmation for lack of an accepting class without regard to the acceptance of insiders under § 1129(a)(10)).

A determination as to whether an entity is an insider is a question of fact, which must be analyzed on a case-by-case basis through examination of the totality of the circumstances and the creditor's degree of involvement in a debtor's affairs. *In re Grumman Olson Industries, Inc.,*

---

[6] The Proposed Plan provides for substantive consolidation, which the Debtors may rely upon to support this lack of fair and equitable treatment, arguing, perhaps, that classes 6 and 8 "disappear" in the consolidation. *See* Proposed Plan at 15. There are problems with this line of reasoning. First, the Debtors appear to want to have their cake and it eat too: the plan provides first that they will be substantively consolidated but then that "[s]ubstantive consolidation shall not affect the legal or organizational structure of the Reorganized Debtors or their separate corporate existences . . . ." *Id.* Yet doing away with separateness is the essence of substantive consolidation. *See In re Augie-Restivo Baking Company*, 860 F.2d 515, 518 (2d Cir. 1988).

Moreover, substantive consolidation is an extraordinary remedy, not a mere procedural device to be deployed lightly. It is to be used sparingly and only after a proper showing. *Id.* "Substantive consolidation has no express statutory basis but is a product of judicial gloss . . . [b]ecause of the dangers in forcing creditors of one debtor to share on a parity with creditors of a less solvent debtor, we have stressed that substantive consolidation is no mere instrument of procedural convenience . . . but a measure vitally affecting substantive rights to "be used sparingly." *Id.* (internal citations and quotations omitted).

329 B.R. 411, 427 (Bankr. S.D.N.Y. 2005); *In re Chas. P. Young Co.,* 145 B.R. 131, 136 (Bankr. S.D.N.Y. 1992). An "insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." H.R. Rep. No. 595, 95th Cong., 2d Sess. 312, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6269. An insider can be any entity whose close relationship with the debtor requires careful scrutiny of the questioned transactions or one who has such a close relationship with the debtor as to require rigorous scrutiny by the courts. *Chas. P. Young*, 145 B.R. at 136. Essentially, the Code's "concern is whether a person is able to exert influence over a debtor so as to gain a more favorable position" or "exercise sufficient authority over the debtor so as to unqualifiedly dictate corporate policy and the disposition of corporate assets." *Grumman Olson Indust.,* 329 B.R. at 427. (internal quotes and citations omitted).

To determine whether an entity is an insider, a number of courts have adopted a test that focuses on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor. *Miller v. Schuman (In re Schuman)*, 81 B.R. 583, 586 (9th Cir. BAP 1987). One court has stated that a party is an insider "if as a matter of fact, he exercises such control or influence over the debtor as to render their transactions not arm's length." *Kepler v. Schmalbach (Matter of Lemanski),* 56 B.R. 981, 983 (Bankr. W.D. Wis. 1986).

Here, the Class 1 lenders and the Debtors have engaged in lengthy restructuring discussions and at least 11 prepetition amendments to their credit facility; they are providing the DIP facility; and they will own the reorganized Debtors. While there may be nothing unusual about this in this case, determining insider status requires further investigation, which there has not been time for the Class Action Antitrust Plaintiffs (or anyone else) to pursue. *See In re Chas. P. Young Co.,* 145 B.R. at 137 ("determination of insider status requires a fact intensive, ad hoc

analysis"). The Class Action Antitrust Plaintiffs reserve their rights to take necessary discovery and to supplement this Objection as appropriate.

## **Waiver of Memorandum of Law**

Because this Objection presents no novel issues of law and the authorities relied upon are set forth herein, Counsel respectfully request that the Court waive the requirement for the filing of a separate memorandum of law in support of this Objection pursuant to Local Bankruptcy Rule 9013-1(b).

## Conclusion

The Class Action Antitrust Plaintiffs request, therefore, (A) that confirmation of the plan be denied if in fact there is no non-insider impaired accepting class, (B) that confirmation be denied if the Proposed Plan is not modified to cure the gerrymandered classification of unsecured claims and the unfair discrimination and lack of fair and equitable treatment of Class 5, and (c) that the Court grant such other and further relief as it deems just.

Dated: March 11, 2008
       New York, New York

Respectfully submitted,

**LUSKIN, STERN & EISLER LLP**

By: /s/ Michael Luskin
    Michael Luskin (ML 3957)

330 Madison Avenue
New York, New York 10017
(212) 293-2700

**MARK C. TANENBAUM, P.A.**
Mark C. Tanenbaum, D.S.C. ID # 4017*
John P. Algar, D.S.C. ID # 540*
Mia Lauren Maness, D.S.C. ID # 5457*
George W. Kuney, TN ID # 021312*

241-243 East Bay Street
Post Office Box 20757
Charleston, SC 29413-0757
(843) 577-5100

**RICHARDSON PATRICK WESTBROOK & BRICKMAN, LLC**
A. Hoyt Rowell, III, D.S.C. ID # 3665*
Robert S. Wood, D.S.C. ID # 7965*
T. Christopher Tuck, D.S.C. ID # 9135*
Daniel O. Myers, D.S.C. ID # 9884*

1037 Chuck Dawley Blvd, Bldg. A (29468)
Post Office Box 1007
Mt. Pleasant, SC 29465
(843) 727-6500

**LAW OFFICES OF HOWARD SIEGEL**
Howard L. Siegel*

c/o Mark C. Tanenbaum, P.A.
241-243 East Bay Street
Charleston, SC 29413-0757

Attorneys for the Class Action Antitrust
Plaintiffs

---

* Pro hac vice admission pending.