UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - :
                                                     :
In re:                                               :    Chapter 11
                                                     :
DJK RESIDENTIAL LLC, et al.,                         :    Case No. 08-10375 (JMP)
                                                     :
                                 Debtors.            :    Jointly Administered
                                                     :
                                                     :
                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - :

## CLASS ACTION ANTITRUST PLAINTIFFS' SUPPLEMENTAL OBJECTION TO CONFIRMATION

### AND

## JOINDER IN OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' PROPOSED JOINT PLAN OF REORGANIZATION[1]

### Preliminary Statement

Donald J. Beach, Scott Hansen, Jeffrey L. Stoloff, Burnetta Nimons, Thomas

Scholtens, and Natalie Hutt, f/k/a Natalie Trueworthy, individually and, upon certification of the

class under Federal Rule of Civil Procedure 23 or Federal Rule of Bankruptcy Procedure 7023,

on behalf of all others similarly situated (the "Class Action Antitrust Plaintiffs"), object to

confirmation of the Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11

of the United States Bankruptcy Code (Docket No. 31) (as amended and supplemented, the

"Proposed Plan").  In summary, the Class Action Antitrust Plaintiffs' objections are:

> A.   *1129(a)(1). Gerrymandered Classification.*  The classification system used
> here, specifically the division of unsecured creditors into three classes –
> Class 4 paid in full claims, Class 5 take nothing claims, and Class 6
> intercompany paid in full claims – is undertaken purely to generate

---

[1] This Supplemental Objection supersedes the Class Action Antitrust Plaintiffs' Objection to
Confirmation filed on March 11, 2008 (Docket No. 265).

accepting, unimpaired status for all claims but those in Class 5, which is then deemed to reject the plan.

B.  *1129(b)(1). Unfair Discrimination.* The Proposed Plan unfairly discriminates against Class 5 by placing these unsecured claims in a class separate and apart from Classes 4 and 6, general unsecured and intercompany claims, and impairing them to the maximum extent possible: they are to be paid nothing and are presumed to reject the plan as a class. This unfair discrimination does not meet the requirements of 11 U.S.C. § 1129(b), the Proposed Plan cannot be crammed down on class 5, and therefore it cannot be confirmed.

C.  *Lack of Fair and Equitable Treatment.* The Proposed Plan is not fair and equitable to Class 5, in that claims of the same priority (Class 4 – Unsecured Ongoing Operations Claims – and Class 6 – Intercompany Claims) are paid in full, while Class 5 is to receive nothing. Further, Class 8 – Intercompany Equity Interests – a class junior to Class 5 – remains unimpaired while Class 5 is to take nothing under the Proposed Plan. This violates the absolute priority rule.

D.  *Constitutionally Defective Notice.* The Debtors have not given actual notice to the members of the Class Action Antitrust Plaintiff's class, which has not yet been certified. The class is made up of (i) customers of the Debtors and (ii) customers of other trucking companies. Both groups have antitrust conspiracy claims against the Debtors. In order to discharge or otherwise affect the claims of the first group, the Debtors had to give the claim holders actual notice, as they have the names and addresses of these creditors. The Debtors consciously chose not to do so, and as a result, those class members' claims cannot be affected by these bankruptcy proceedings or the plan's confirmation. They will "ride through" the bankruptcy cases. To the extent that the plan provides otherwise, it violates sections 1129(a)(1) through (3) as it does not comply with applicable law.

As a result, confirmation of the plan should be denied if the Proposed Plan is not modified to cure the gerrymandered classification of unsecured claims, the unfair discrimination and lack of fair and equitable treatment of Class 5, and the lack of constitutionally adequate notice to members of the Class Action Antitrust Plaintiffs' uncertified class, as well as the other defects identified in the Objection of the Official Committee of Unsecured Creditors to Debtors Proposed Plan of Reorganization pursuant to Chapter 11 of the United States Bankruptcy Code

(the "OCC Objection to Confirmation"), in which the Class Action Antitrust Plaintiffs hereby join and incorporate into this objection by reference as if fully set forth herein.

**Facts**

**A.     The Class Action Antitrust Plaintiffs' Claims**

On March 19, 2007, *Beach, et al.  v. Atlas Van Lines, et al.*, C.A. No. 2:07-764, was filed in the United States District Court for the District of South Carolina, Charleston Division.  The class action Complaint states two causes of action against a number of defendants, including SIRVA, Inc., SIRVA Worldwide, Inc., North American Van Lines, Inc. and Allied Van Lines, Inc., each of which are also Debtors in these bankruptcy cases.  The first cause of action is for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  The second seeks damages under 49 U.S.C. § 14704(b) for rates charged in excess of the applicable rate for transportation or service contained in a tariff published under 49 U.S.C. § 13702.  The factual underpinnings for the causes of action center on a conspiracy between the named moving company defendants and others unknown, as well as the trade association of which all are members, to illegally set and charge to residential moving customers fuel surcharges greatly in excess of the actual cost of fuel used for each customer's move.[2]  The Class Action Antitrust Plaintiffs' damages consultant estimates that liability will exceed $1.5 billion dollars without trebling.

The Complaint seeks certification of a class that includes:

All individuals or entities (excluding governmental entities, Defendants, and Defendants' parents, predecessors, subsidiaries, affiliates, agents and Defendants' co-conspirators) who purchased

---

[2] The summation of the foundation for Plaintiffs' claims in one sentence is a gross simplification of the bases for the claims asserted.  The *Beach* Complaint is 28 pages in length and contains detailed factual allegations concerning the conspiracy, the purpose of a fuel surcharge, the scheme employed by Defendants to implement the illegal fuel surcharge, and the limited circumstances in which a fuel surcharge could have been lawfully charged.  A copy of the *Beach* Complaint, excluding its attachments, is attached as Exhibit A.

Household Goods Moving Services for interstate shipments directly from any of the Defendants, and Defendants' co-conspirators or, Defendants' predecessors, subsidiaries, affiliates or agents, at any time during the period within four years prior to the filing of this action.

On May 4, 2007, *Moad, et al. v. Atlas Van Lines, et al.*, N.D. Illinois, C.A. No. 1:07-2506 was filed. The *Moad* complaint is nearly identical to the *Beach* complaint in its pleading of the allegations under the Sherman Act and 49 U.S.C. § 14704(b). It also asserts additional causes of action: 1) 18 U.S.C. § 1962(c) – RICO; and 2) 18 U.S.C. § 1962(d) – RICO; 3) Breach of a Contractual Duty of Implied Duty of Good Faith and Fair Dealing under Illinois law; 4) Consumer Fraud and Deceptive Business Practice Act under Illinois state law; and 5) Unjust Enrichment under Illinois state law. The *Moad* complaint also seeks class certification and defines the class with terms identical to those used in *Beach*, except for the relevant time period covered by the class. The defendants named in *Moad* are identical to those named in *Beach*.

The *Beach* Defendants filed a variety of motions to dismiss on June 8, 2007, including a Joint Motion to Dismiss by all Defendants. In response to some of the motions, *Beach* Plaintiffs voluntarily dismissed all claims against Atlas World Group, Inc., SIRVA, Inc., SIRVA Worldwide, Inc.,[3] Unigroup, Inc., and Bekins Van Lines, LLC. The *Beach* Plaintiffs also voluntarily dismissed their claims in Count II of the Complaint against the American Moving and Storage Association, Inc. The Joint Motion to Dismiss, which seeks dismissal of the Complaint in its entirety, remained for determination by the Court.

On August 16, 2007, the Judicial Panel on Multidistrict Litigation determined that the *Beach* and *Moad* actions should be assigned to a single judge for coordinated or consolidated pretrial proceedings. *See In re Household Goods Movers Antitrust Litigation*, MDL No. 1865,

502 F. Supp.2d 1356 (J.P.M.L. 2007).  Accordingly, the MDL Panel transferred the *Moad* action to the District of South Carolina on September 9, 2007.  The district court assigned a new civil action number, 2:07-2861.  Prior to the transfer, on September 5, in conformity with voluntary dismissals previously filed in *Beach*, the *Moad* Plaintiffs filed voluntary dismissals of all claims against Atlas World Group, Inc., SIRVA, Inc., SIRVA Worldwide, Inc.,[4] and Unigroup, Inc. and a portion of their complaint as to American Moving and Storage Association, Inc.  The *Moad* Plaintiffs also dismissed their RICO and state law claims.

Another nearly identical complaint, *Boone v. Atlas Van Lines, et al.*, N.D. Alabama, C.A. No. CV-07-CO-2269-S, was filed on December 14, 2007.[5]  It was transferred to the District of South Carolina on February 8, 2008 and assigned civil action number 2:08-486.  It includes four additional causes of action to those asserted in *Beach*: 1) 18 U.S.C. § 1962(c) – RICO; 2) 18 U.S.C. § 1962(d) – RICO; 3) Breach of a Contractual Duty of Implied Duty of Good Faith and Fair Dealing under Alabama state law; and 4) unjust enrichment under Alabama state law.  The *Boone* complaint also seeks class certification and defines the class with terms identical to those used in *Beach*, except for the relevant time period covered by the class.

The chart attached as Exhibit B summarizes the three actions, the Debtor defendants currently named in each, and the claims against each Debtor defendant.  The complaints in the three actions do not specify the value placed on each of the causes of action, and the Class Action Antitrust Plaintiffs' claims are unliquidated.

Oral argument on Defendants' Joint Motion to Dismiss was heard by the Honorable C. Weston Houck on October 23, 2007.  On March 31, 2008, Judge Houck issued an

---

[3] Although SIRVA, Inc. and SIRVA Worldwide, Inc. were dismissed from the action without prejudice, the claims against their subsidiaries North American Van Lines, Inc. and Allied Van Lines, Inc. continue.

[4] Although SIRVA, Inc. and SIRVA Worldwide, Inc. were dismissed from the action without prejudice, the claims against their subsidiaries North American Van Lines, Inc. and Allied Van Lines, Inc. continue.

order in *Beach* and *Moad* denying the Joint Motion to Dismiss.[6]  Since the Order on the Joint

Motion to Dismiss has been filed, discovery activities may commence against the non-debtor

defendants.  The current Consent Scheduling Order in *Beach* allows for discovery requests to be

served by late May 2008 and for Plaintiffs' class certification motion to be filed by

mid-October 2008.

Counsel for Plaintiffs in *Beach*, *Moad* and *Boone* have agreed on an interim

leadership structure to guide the progress of the case prior to a formal motion for class

certification and appointment as class counsel.  Under that agreement, interim co-lead counsel

are to be Mark C. Tanenbaum, A. Hoyt Rowell, III and Howard Louis Siegel.  The structure of

the agreement and the responsibilities of those who are participating in it are set forth in a

proposed order that was submitted to the Honorable C. Weston Houck, by consent, on

January 11, 2008.[7]  As of the date this objection was filed, Judge Houck has not ruled on the

proposed interim leadership structure.

Accordingly, Messrs. Tanenbaum, Rowell, and Siegel currently represent only the

named plaintiffs with whom they have entered into contracts of representation, not the absent

class members.[8]  Until they are formally appointed by the court upon a showing of compliance

with the mandates of Federal Rule of Civil Procedure 23 or Federal Rule of Bankruptcy

Procedure 7023, these attorneys only represent the named class representatives, and therefore

cannot receive service of documents and forms of notice for absent class members.[9]

---

[5] The defendants named in *Boone* include North American Van Lines, Inc. and Allied Van Lines, Inc.

[6] A copy of the decision is annexed as Exhibit C.

[7] A copy of the proposed order is annexed as Exhibit D.

[8] All have been admitted pro hac vice here.  *See* Docket Nos. 270, 273 and 309.

[9] *See* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 07-445, at 2-3 (2007) ("A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired.  If the client has neither a consensual relationship with the lawyer nor a legal substitute for consent, there is no representation.

**B.    The Debtors' Failure to Provide Notice to
Class Members Other Than The Named Plaintiffs**

The Debtors acknowledge that their records indicate that they "have provided their Moving and Relocation Services to approximately 740,000 Individual Customers over the last three years." *See* Motion of the Debtors for Entry of an Order (A) Scheduling a Combined Hearing on the Adequacy of the Disclosure Statement and Confirmation of the Prepackaged Plan of Reorganization, (B) Approving Procedures for Filing Objections Thereto, (C) Approving the Form and Manner of Notice of the Combined Hearing, and (D) Granting Related Relief (the "Debtors' Motion Concerning Notice to Customers") (Docket No. 30 at ¶ 27).  In the first days of these cases, the Debtors and their counsel informed this Court of their deliberate decision not to provide actual notice to these Individual Customers.  *See* OCC Confirmation Objection, at §II(M) (Facts Concerning Notice to the Holders of Class 5 Claims).  This decision was made despite the fact that the Debtors admittedly have records of Individual Customers, which contain the names and addresses of these customers.  These same customers who were not given actual notice of these proceedings are members of the Class Action Antitrust Plaintiffs' not-yet-certified class, which includes customers of the Debtors and the other defendants in the Class Action.

**C.    The Debtors' Plan and Disclosure Statement**

The Debtors have proposed a secured-creditor-led restructuring that will: (1) issue new equity to the former primary secured creditor group, Class 1, and (2) wipe out old equity and certain unsecured creditors that have been placed by the Debtors in Class 5.

---

Therefore, putative class members are not represented parties for purposes of the Model Rules prior to certification of the class and the expiration of the opt-out period.").

The Debtors acknowledge as much. According to their Proposed Disclosure Statement, the primary purpose of the Proposed Plan is to effectuate a restructuring of the Debtors' obligations as follows:

(a) The aggregate amount of 2008 Revolving Loans, 2008 Reimbursement Obligations and the New Term Loans (as defined in the Pre-Petition Credit Agreement) shall be paid in full with proceeds of the DIP Facility upon the entry of an interim order by the Bankruptcy Court approving the DIP Facility. All 2008 Letters of Credit will be replaced by DIP letters of credit. On the Effective Date, subject to the terms of the DIP Facility, the aggregate outstanding amount under the DIP Facility will be converted to loans outstanding under the Exit Facility and all DIP Letters of Credit and undrawn letters of credit issued under the Pre-Petition Credit Agreement will be rolled into the Exit Facility.

(b) On the Effective Date, the aggregate outstanding principal amount of Term Loans and Revolving Loans (as each such term is defined in the Pre-Petition Credit Agreement (other than 2008 Revolving Loans, the 2008 Reimbursement Obligations and the New Term Loans; collectively, the "Pre-Petition Loans")) and the interest accrued and unpaid on the Pre-Petition Loans through the Effective Date (collectively, the "Accrued Interest"), in the aggregate amount of $200 million will be restructured into a new second lien term loan facility (the "Second Lien Facility");

(c) The Pre-Petition Lenders shall convert that portion of the aggregate Pre-Petition Obligations (as defined in the Restructuring Term Sheet) which is not repaid by the DIP/Exit Credit Facility or restructured under the Second Lien Facility into not less than 75% (subject to dilution by the Management Incentive Plan) of the New Common Stock of the Reorganized Debtors issued on the Effective Date under the Plan, with such New Common Stock to be distributed on a Pro Rata basis in accordance with the Lenders' holdings of such Pre-Petition Obligations;

(d) Upon and after the Effective Date (defined below), the Plan provides for a distribution of New Common Stock or Cash to Holders of Claims entitled to distributions under the Plan; and

(e) Creditors holding Class 5 claims – defined as unsecured claims "arising with an Entity with whom the Debtors have ceased ongoing business relationships" – are to receive no distributions under the plan, although other general unsecured creditors in Classes 4 (Unsecured Ongoing Operations Claims) and 6 (Intercompany Claims) are treated as unimpaired and will be paid in full, and Class 8 (Intercompany Equity Interests) are also to be treated as unimpaired.

Thus, unlike most pre-packaged or pre-negotiated plans of reorganization, this is not a plan that observes the absolute priority rule as it wipes out those creditors and equity holders that are "out of the money" and issues new equity to the secured lenders that are seeking to re-capitalize and assume control of the Debtors through the Chapter 11 process. Rather, the secured lenders and the Debtors, through the Proposed Plan, are seeking to take the extra step of stripping off the unsecured claims they do not wish to pay – mainly litigation claims – and they are attempting to do so without proper notice to all those that they purport to affect.

**Objections To Confirmation**

**A.   CLASSIFICATION OF UNSECURED CREDITORS INTO THREE SEPARATE CLASSES IS IMPERMISSIBLE GERRYMANDERING PROHIBITED BY 11 U.S.C. §§ 1129(a)(1) AND 1122**

Under section 1129(a)(1) of the Bankruptcy Code, a plan must comply with the applicable provisions of Title 11. The legislative history of this section explains that this embodies the requirements of sections 1122 and 1123, governing classification of claims and the contents of a plan. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978). Here, Classes 4, 5, and 6 all consist of unsecured claims.[10] They have been classified separately so that Classes 4 and 6 can be treated in an unimpaired manner, thus creating two unsecured classes that will be deemed to accept the plan. Class 5, which is to receive nothing under the proposed plan, is separately classified so that its rejections will not endanger or undermine acceptances of Classes 4 and 6.

The Debtors' Proposed Plan violates the "one clear rule" on claims classification under 11 U.S.C. § 1122: "thou shall not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Matter of Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991). The Second Circuit has made it clear that "to

warrant separate classification of similar claims, the debtor must advance a legitimate reason supported by credible proof." *In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996). Further, this Court has held that "separate classification of substantially similar unsecured claims is permissible only when there is a reasonable basis for doing so or when the decision to separately classify does not offend one's sensibility of due process and fair play. *In re Adelphia Communications Corp.,* 368 B.R. 140, 246-47 (Bankr. S.D.N.Y. 2007) (internal quotations omitted).

In filing their Proposed Plan and Proposed Disclosure Statement, the Debtors have not met these standards, nor can they: all general unsecured claims here are of equal legal stature and right. The only reason to separately classify Classes 4, 5, and 6 is to affect the vote tally and discriminate against a set of unsecured creditors – Class 5, including the Class Action Antitrust Plaintiffs – in favor of the balance, Classes 4 and 6.

## B. THE PLAN UNFAIRLY DISCRIMINATES AGAINST CLASS 5, FAILING TO SATISFY § 1129(b)

The Proposed Plan unfairly discriminates against Class 5 by placing these unsecured claims in a class separate and apart from Classes 4 and 6,[11] which are comprised of general unsecured and intercompany claims, and impairing the Class 5 claims to the maximum extent possible: they are to be paid nothing and are presumed to reject the plan as a class. This unfair discrimination does not meet the requirements of 11 U.S.C. § 1129(b) – the Proposed Plan cannot be crammed down on Class 5, and therefore it cannot be confirmed.

The prohibition on unfair discrimination requires that the Proposed Plan allocate value to each dissenting class in a manner consistent with the treatment given to other classes

---

[10] To the extent that the Pre-petition Facility Claims in Class 1 are under-secured claims, Class 1 also consists, in part, of unsecured claims.

[11] And also separate and apart from any unsecured claims in Class 1 arising from the under-secured status of the Pre-petition Facility Claims.

with similar legal claims against the Debtors. Thus, the dissenting class must receive value equal to the value given to all other similarly situated classes. *In re Mcorp Fin., Inc.,* 160 B.R. 941, 960 (S.D. Tex. 1993). The prohibition on unfair discrimination "ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes . . . . Thus a plan proponent may not segregate two similar claims or groups of claims into separate classes and provide disparate treatment for those classes" *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (internal citations omitted).[12] The Debtors' Proposed Plan does not meet these requirements and should not be confirmed.

This Court has utilized a four-part test to determine whether discrimination is impermissibly unfair. *See In re Buttonwood Partners, Ltd.,* 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); *see also Mercury Capital Corp. v. Milford Conn. Assocs., L.P.,* 354 B.R. 1 (D. Conn. 2006) (citing *Buttonwood).* Under the *Buttonwood Partners* test, the plan proponent must show that: (i) there is a reasonable basis for discriminating, (ii) the plan cannot be consummated without the discrimination, (iii) the discrimination is proposed in good faith, and (iv) the degree of discrimination is in direct proportion to its rationale. *Buttonwood Partners, supra* (collecting cases). "[I]nability to reorganize without the discrimination in and of itself is not a legitimate basis for disparate treatment." *In re Crosscreek Apartments, Ltd.,* 213 B.R. 521, 538 n.21 (Bankr. E.D. Tenn. 1997).

Here, the Debtors have not articulated valid reasons for the extreme discrimination that they are attempting to impose upon Class 5 creditors and cannot be found to have passed even one prong of the *Buttonwood Partners* test. Class 5 creditors consist of a

---

[12] Similarly, *In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 831 (Bankr. S.D.N.Y. 1982), the Court held that, "the debtor may not ignore the rejection of its plan by the holder of a large unsecured deficiency claim simply because the debtor designated a specially preferred separate class of easily created trade creditors whose acceptances may be readily obtainable by offering them more than the disfavored

hodge-podge of 39 creditors – down from the original group of 48 specified by the Debtors – holding claims as varied as pension guaranty claims, litigation claims, preference claims, contract and lease rejection damage claims, and a tax claim. *See* First Supplemental Declaration of Adam C. Paul in Support of Amended Schedule of Certain Claims Filed with the Court (Docket No. 389). There appears to be no basis for discriminating against the Class 5 claimants – the Debtors' only professed justification is their business preference, but that is not a legally sufficient reason, especially in the face of the compelling equities favoring fair treatment for Class 5. *See In re Weiss-Wolf, Inc.*, 59 B.R. 653, 655 (Bankr. S.D.N.Y. 1986) (cannot discriminate against claims merely because they are disputed). This is not the sort of reasonable basis or good faith required by the *Buttonwood Partners* test. In light of the extreme discrimination between the classes – 100% payoff to Class 4, 0% payoff to Class 5, and 100% payoff to Class 6 – the Proposed Plan's separate classification scheme cannot be approved.

A more recent, and somewhat clearer, test is contained in *In re Quay Corporation, Inc.,* 372 B.R. 378, 385-386 (Bankr. N.D. Ill. 2007), *In re Armstrong World Industries, Inc.,* 348 B.R. 111 (D. Del. 2006), and *In re Dow Corning Corp.,* 244 B.R. 696, 701 (Bankr. E.D. Mich. 1999), which set forth what is known as the "*Markell* test" to recognize a rebuttable presumption of unfair discrimination that arises when there is:

(1) a dissenting class;

(2) another class of the same priority; and

(3) a difference in the plan's treatment of the two classes that results in either:

  (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or

---

deficiency claim holder. Manifestly, such treatment of unsecured claims is unfairly discriminatory within the meaning of 11 U.S.C. § 1129(b)(1)."

(b)     regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution.

372 B.R. 378 at 386 (citing Bruce A. Markell, *A New Perspective on Unfair Discrimination in Chapter 11*, 72 AM. BANKR. L.J. 227 (1998)); *accord*, *In re Armstrong World Indus.,* 348 B.R. 111, 121-22 (D.Del. 2006).

Here, applying the *Markell* test, the presumption of unfair discrimination is met:

(1)     Class 5 is deemed to be a dissenting class by operation of 11 U.S.C. §1126(g);

(2)     Classes 4, 5 and 6 are classes of unsecured claims of the same priority;

(3)     The difference in the plan's treatment of the three classes results in a materially lower percentage recovery for Class 5 (0%) than for Classes 4 (100%) and 6 (100%).

When the *Markell* presumption arises, as it does here, it can only be rebutted "by showing that, outside of bankruptcy, the dissenting class would similarly receive less than the class receiving a greater recovery, or that the alleged preferred class had infused new value into the reorganization which offsets its gain." *Id*. Here, no such rebuttal can be made. Outside of bankruptcy, Classes 4, 5 and 6 (and any unsecured claims included in Class 1 due to the under-secured status of the pre-petition credit facility) would have equal rights against the Debtors and their property as unsecured creditors, and Class 6 might even be subject to lesser rights under doctrines such as equitable subordination or recharacterization.

Plans that discriminate by dividing similarly situated claims into separate classes and then propose to make substantial or complete payments to one class, while making insubstantial or no payment to the class discriminated against, are disfavored and routinely denied confirmation. *See, e.g., In re Hoffinge Industries, Inc.*, 321 B.R. 498 (Bankr. E.D. Ark. 2005) (plan that separately classified litigation claims and proposed 0% distribution apart from

wasting insurance policy proceeds while other unsecured creditors were to receive 30% distributions was unconfirmable for unfair discrimination); *In re Snyders Drug Stores, Inc.,* 307 B.R. 889 (Bankr. N.D. Ohio 2004) (denying confirmation where plan separately classified unsecured creditors and proposed 0% distribution to one class, since 0% is not a meaningful recovery); *In re SV/Home Office, Inc.,* 2003 W.L. 23211575 (Bankr. M.D.N.C. 2003) (plan that separately classified unsecured litigation claims and proposed 0% distribution to that class held unconfirmable for unfair discrimination); *In re Aztec Co.,* 107 B.R. 585 (Bankr. M.D. Tenn. 1989) (plan that separately classified unsecured claims and proposed to pay 100% to those with affiliations with the debtor and 3% to the others held unconfirmable due to unfair discrimination); *see also In re Eisenbarth,* 77 B.R. 228 (Bankr. D.N.D. 1987) ("No valid reason exists for treating [some] unsecured claims . . . different than the unsecured claims of the trade creditors").  As stated in *In re Arn, Ltd.*, 140 B.R. 5 (Bankr. D.D.C. 1992):

> The court's holding [of unfair discrimination] applies with equal force to Class Five which is to receive nothing under the plan. . . . That the claims are disputed, however, is not a justification for the discriminatory treatment . . . . Moreover, that the claims greatly exceed other general trade claims is no basis for discriminatory treatment: whatever the amount of the Class Five claims, they are entitled to equal treatment in the absence of a justification for discrimination. Finally, . . . . there has been no sound justification for the discriminatory treatment. . . . [t]he proper focus is the legal stature of the claims against the debtor's assets and both trade claims and tort claims enjoy equal standing against the debtor's assets.

S*ee also In re Toy & Sports Warehouse, Inc.,* 37 B.R. 141, 151-52 (S.D.N.Y. 1984) ("the holder of a claim or interest may not be singled out and subjected to unfair and discriminatory treatment . . . . Nor may a plan give insiders the same priority as unsecured creditors").

The Proposed Plan here does not pass the *Buttonwood Partners* test and raises the *Markell* presumption of unfair discrimination, and the Debtors cannot overcome that presumption.  It would award similarly situated creditors outside of bankruptcy the most widely

disparate treatment possible: 100% payout for Classes 4 and 6, and 0% for Class 5. Confirmation of the Debtors' Proposed Plan should thus be denied.

### C. THE PLAN IS NOT FAIR AND EQUITABLE, VIOLATING THE ABSOLUTE PRIORITY RULE UNDER § 1129(b)(2)(B)

The Proposed Plan is not fair and equitable to Class 5 as that term is defined in 11 U.S.C. § 1129(b)(2)(B). Class 6 (Intercompany Claims) – which is arguably subordinate to but at least *pari passu* with general unsecured claims – is to be paid in full, while Class 5 is to receive nothing. Further, Class 8 (Intercompany Equity Interests) – a class junior to Class 5 unsecured creditors in terms of absolute priority – remains unimpaired while Class 5 is to take nothing under the Proposed Plan. Under 11 U.S.C. § 1129(b)(2)(B), if a class of non-accepting unsecured creditors is not paid in full under the plan, no junior class may receive or retain anything under the plan. This requirement is not met here.

As observed in *In re Iridium Operating LLC*, 478 F.3d 452, 462-3 (2d Cir. 2007), the absolute priority rule means that "any plan of reorganization in which stockholders [a]re preferred before . . . creditor[s], is invalid." Similarly, in *Securities and Exchange Commission v. American Trailer Rentals Co.,* 379 U.S. 594, 611 (1965), the court stated that the "words 'fair and equitable' are 'words of art' which mean that senior interests are entitled to priority over junior ones." S*ee also In re Armstrong World Indus., Inc.,* 320 B.R. 523, 533 (D.Del.), *aff'd* 432 F.3d 507 (3d Cir. 2005).[13] Since the absolute priority rule is not met in the case of Classes 6 and 8 with respect to Class 5, confirmation should be denied.

---

[13] Both *Iridium* and *Armstrong* are critical of and reject a "gifting" theory to avoid the strictures of the absolute priority rule under which senior classes may provide distributions to junior classes while intermediate classes are paid nothing or less than par. Thus, the "gifting" theory of *In re SPM Manufacturing Corp.,* 984 F.2d 1305 (1st Cir. 1993), cannot serve as a way around the absolute priority rule in the Second or Third Circuits.

### D. NOTICE OF THESE PROCEEDINGS IS CONSTITUTIONALLY DEFECTIVE TO MEMBERS OF THE CLASS ACTION ANTITRUST PLAINTIFFS' UNCERTIFIED CLASS

Notice and opportunity to be heard are at the heart of due process and the bankruptcy process. *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Industries, Inc.),* 43 F.3d 714, 720-721 (1st Cir. 1994) (adequate notice lies at the heart of due process and is "the cornerstone underpinning Bankruptcy Code procedure"). While the exact number of individual claimants in the *Beach* class action has not yet been determined, we believe that the class will contain hundreds of thousands of members, all of whom hold fuel surcharge claims against the Debtors for services rendered between 2003 and 2007.[14] The Debtors have failed to provide constitutionally adequate notice to the members of the Class Action Antitrust Plaintiffs' as-yet-uncertified class, other than the individually named plaintiffs.

Section 101(5) of the Bankruptcy Code defines the term "claim" broadly[15] to encompass rights to payment that may not have yet arisen. In the case of class action litigation such as the *Beach* antitrust class action, certain potential claimants may not even be aware that they hold a claim absent notice. Constitutional due process concerns arise when a bankruptcy court order purports to discharge or otherwise affect these claims without proper notice, since "the statutory command for notice embodies a basic principle of justice – that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights." *See New York v. New York, New Haven & Hartford Ry. Co.*, 344 U.S. 293, 297 (1953); *see also Brody v. Village of Port Chester*, 434 F.3d 121, 127 (2d Cir. 2005) (due process requires that notice be

---

[14] Indeed, the Debtors acknowledge that their records indicate that they "have provided their Moving and Relocation Services to approximately 740,000 Individual Customers over the last three years." *See* Debtors' Motion Concerning Notice to Customers (Docket No. 30 at ¶ 27).

[15] "The term 'claim' means – (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *See* 11 U.S.C. § 101(5).

provided to allow for an "'opportunity for hearing appropriate to the nature of the case.'" (internal citation omitted)).

The judicial fiction of notice by publication is sometimes used to provide parties with notice, but it is not constitutionally adequate in all circumstances. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the Supreme Court set out the basic rules: The Due Process Clause requires that notice of actions affecting a person's property rights be reasonably calculated under the circumstances to apprise them of the pendency of the action and afford them an opportunity to present their objections. A method of notice may be justified by showing that it is reasonably certain to inform the affected parties or, failing that, the chosen method is not substantially less likely to provide notice than other feasible substitutes. *Id.* Here, the Debtors assert that notice by publication is sufficient notice for the Debtors' customers. *See* Debtors' Motion Concerning Notice to Customers (Docket No. 30 at ¶ 27).

Notice by publication is insufficient here. Publication notice alone is inadequate when the claimants and their whereabouts are known to the debtor or could be determined through due diligence. *See generally New York v. New York, New Haven & Hartford Ry. Co.*, 344 U.S. 293 (1953) (holding that notice by publication was insufficient when the claimant's identity and whereabouts were known to the debtor). Since the Debtors admittedly have detailed records that upon belief contain the names and addresses of all its customers, they must provide individualized notice to all Individual Customers.

The Debtors have provided the Court with a mistaken view of Individual Customers' claims, stating that they are unimpaired under the Plan and that individual notice "would simply be a cause of unnecessary worry for the Individual Customers." *See* Debtors' Motion Concerning Notice to Customers (Docket No. 30 at ¶ 27). Based upon this erroneous assumption, the Debtors cite to *Mullane* for the proposition that "publication notice is a

'customary substitute' where service is not otherwise practicable." *Id*. The Debtors are mistaken for several reasons. First, the Debtors' customers have claims for antitrust damages as members of Class 5 as well as the ordinary course customer claims that the Debtors say they are dealing with as they always have. Under the Debtors' Proposed Plan, Class 5 claims are severely impaired – they are to receive nothing. Second, individual notice would not "simply be a cause of unnecessary worry" to the customers – it is of vital importance to these customers because it will alert them that they hold claims against the Debtors and enable them to protect their rights to payment. Third, publication notice here is a poor substitute for individual notice. Publication notice only satisfies the requirements of due process "when the names, interests, and addresses of persons are unknown." *See New York v. New York, New Haven & Hartford Ry. Co.*, 344 U.S. 293, 296 (1953). Indeed, *Mullane*'s holding that publication notice is a "customary substitute" was narrowly tailored to apply only "in the case of persons missing or unknown." 339 U.S. at 317. Here, the Debtors admittedly have records of at least 740,000 customers that have used their services over the past three years. *See Brody v. Village of Port Chester*, 434 F.3d 121 (2d Cir. 2005) (holding that publication notice was insufficient because the names and addresses of the affected parties were known to the defendant-appellee); *see also In re Thomson McKinnon Securities Inc.*, 130 B.R. 717, 719 (Bankr. S.D.N.Y. 1991) ("constructive notice by publication is not reasonable notice to creditors whose names, addresses and interests are known to the debtor." (internal citation omitted)).

The Debtors have failed to comply with constitutional due process standards because they have not provided individualized notice to the members of the as-yet-uncertified class (other than the individually named Class Action Antitrust Plaintiffs) who are customers of the Debtors. As a result, they and their claims are not affected by these proceedings and will not be subject to the provisions of the Proposed Plan if it is confirmed. Their claims will ride

through bankruptcy and be assertable against the reorganized Debtors as if this case had never been commenced. *See Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Industries, Inc.),* 43 F.3d 714, 720 n. 9 (1st Cir. 1994) (since the product liability plaintiff and the defendant retailer of a small caliber handgun manufactured by the debtor were not given notice of the chapter 11 proceedings, the chapter 11 plan, or the terms of the sale of substantially all the debtor's assets, their claims against the debtor and the successor were not extinguished or discharged).

The lack of notice to these creditors in this case was intentional and thus cannot be excused or justified by equity. Notice concerns are at their highest where, as here, the proceedings are intended to wipe out these claims of Class 5 creditors entirely with no distribution, while other, similarly situated claims of equal standing in fact and law are to be paid in full. Therefore, the Court should rule that these proceedings and the Proposed Plan, if confirmed, have no effect upon the members of the Class Action Antitrust Plaintiffs' uncertified class members that have not received proper individual notice.

### Waiver of Memorandum of Law

Because this Objection presents no novel issues of law and the authorities relied upon are set forth herein, Counsel respectfully request that the Court waive the requirement for the filing of a separate memorandum of law in support of this Objection pursuant to Local Bankruptcy Rule 9013-1(b).

## Conclusion

The Class Action Antitrust Plaintiffs request, therefore that: (A) confirmation be denied if the Proposed Plan is not modified to cure the gerrymandered classification of unsecured claims, the unfair discrimination and lack of fair and equitable treatment of Class 5, and the other defects identified above and in the Objection of the Official Committee of Unsecured Creditors to Debtor's Proposed Joint Proposed Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code, (B) these proceedings and any order confirming the Proposed Plan recognize that the plan has no effect upon the members of the Class Action Antitrust Plaintiffs' uncertified class other than the named plaintiffs, and (C) the Court grant such other and further relief as it deems just and proper.

Dated: April 11, 2008
New York, New York

Respectfully submitted,

**LUSKIN, STERN & EISLER LLP**

By: /s/ Michael Luskin
Michael Luskin (ML 3957)

330 Madison Avenue
New York, New York 10017
(212) 293-2700

**MARK C. TANENBAUM, P.A.**
Mark C. Tanenbaum, D.S.C. ID # 4017*
John P. Algar, D.S.C. ID # 540*
Mia Lauren Maness, D.S.C. ID # 5457*
George W. Kuney, CA # 142777, TN # 021312*

241-243 East Bay Street
Post Office Box 20757
Charleston, SC 29413-0757
(843) 577-5100

**RICHARDSON PATRICK WESTBROOK & BRICKMAN, LLC**
A. Hoyt Rowell, III, D.S.C. ID # 3665*
Robert S. Wood, D.S.C. ID # 7965*
T. Christopher Tuck, D.S.C. ID # 9135*
Daniel O. Myers, D.S.C. ID # 9884*

1037 Chuck Dawley Blvd, Bldg. A  (29468)
Post Office Box 1007
Mt. Pleasant, SC   29465
(843) 727-6500

**LAW OFFICES OF HOWARD SIEGEL**
Howard L. Siegel*
c/o Mark C. Tanenbaum, P.A.
241-243 East Bay Street
Charleston, SC 29413-0757

Attorneys for the Class Action Antitrust Plaintiffs

---

\* Admitted to practice pro hac vice.