THE CULLEN LAW FIRM PLLC
Daniel E. Cohen (D.C. Bar No. 414985)
1101 30th St NW, Ste. 300
Washington, DC 20007
Telephone: 202-944-8600
Facsimile: 202-944-8611

Francis P. Dicello (D.C. Bar No. 80051)
P.O. Box 6238
Washington, D.C. 20015
Phone: 202-215-6417
Fax: 202-364-0680

COUNSEL FOR THE OOIDA CLASS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DIVISION OF NEW YORK**

| | |
|---|---|
| **In re:** ) | **Chapter 11** |
| ) | **Case No. 08-10375-10434(JMP)** |
| **DJK Residential LLC, et al.,** ) | **Jointly Administered** |
| ) | |
| ) | |
| **Debtors.** ) | |
| ) | |

**SUPPLEMENTAL OBJECTION OF THE OOIDA CLASS TO DEBTORS'
PROPOSED JOINT PLAN OF REORGANIZATION PURSUANT TO
CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

The OOIDA Class respectfully submits its Supplemental Objection to confirmation of the Debtors' Proposed Joint Plan of Reorganization ("Proposed Plan"). In support of the Supplemental Objection, the OOIDA Class states as follows:

1. The OOIDA Class adopts, supports and incorporates by reference herein the objections to plan confirmation as set forth in the "*Objection of the Official Committee of Unsecured Creditors to Debtors' Proposed Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code.*" Document-411.

2. The OOIDA Class further Objects to Confirmation of the Proposed Plan on the grounds that the $5 million undisputed and liquidated claim of the OOIDA Class has been improperly treated as a Class 5 claim by the Debtors. The Proposed Plan thus discriminates unfairly, inequitably, and arbitrarily against the OOIDA Class.

3. On April 10, 2008 this Court denied, without prejudice, the Motion of the OOIDA Class for Entry of An Order Directing Debtors to Comply with Classification of Owner Operators as Class 4 Creditors, or Alternatively, for Entry of An Order Reclassifying Owner Operators as Class 4 Creditors ("OOIDA Motion"). The OOIDA Motion asserted that the undisputed and liquidated claim of the OOIDA Class has been improperly treated as a Class 5 claim in contravention of the criteria set forth in the Proposed Plan. The OOIDA Motion further asserted that such treatment of its claim is improper, discriminatory and in violation of Sections 1122 and 1129 of the Bankruptcy Code.

4. Debtors' attempt to treat the OOIDA Class Claim as a Class 5 Claim improperly deviates from the criteria in the Proposed Plan for Class 4 and Class 5 creditors and/or claims.

## FACTS

5. The Debtors' Prepackaged Joint Plan of Reorganization divides non-Lender unsecured claims into two classes – Class 4 and Class 5. *Id.*, ARTICLE III, ¶ B. 4-5.

6. Class 4 claims include all "Unsecured Ongoing Operations Claims." *Id.*, ARTICLE III, ¶ B. 4. "Unsecured Ongoing Operations Claim" is defined as "any unsecured Claim against any of the Debtors that is not a/an: (a) DIP Facility Claim; (b)

Administrative Claim; (c) Priority Tax Claim; (d) Prepetition Facility Claim; (e) Other Priority Claim; (f) Other Secured Claim; (g) General Unsecured Claim; or (h) Intercompany Claim." *Id*., ARTICLE I, ¶ A. 104.

7. Class 5 claims include all "General Unsecured Claims." *Id*., ARTICLE III, ¶ B. 5. "General Unsecured Claim" is defined as "any unsecured Claim arising with an Entity with whom the Debtors have ceased ongoing business relationships classified in Class 5." *Id*., ARTICLE I, ¶ A. 52.

8. Under the Plan, Class 4 Creditors are entitled to be "paid in full in Cash." *Id*., ARTICLE III, ¶ A. 4 (b). Class 5 Creditors are entitled to no distribution under the Plan. *Id*., ARTICLE III, ¶ A. 5(b).

9. The Debtors have filed a Declaration in which they designate the OOIDA Class among "creditors classified as Holders of Class 5 Claims, <u>as those terms are defined in the Plan and Disclosure Statement."</u> (*OOIDA EXHIBIT 2*, *March 3, 2008 Declaration of Adam Paul, ¶ 2*)("Paul Declaration"). However, the Paul Declaration contains no explanation as to how the designation of the OOIDA Class in Class 5 comports with the classification criteria of the Debtors' Plan.

10. The OOIDA Class is composed of several thousand owner-operator truck drivers who have provided operational hauling and related services to the Debtors SIRVA, Inc., Allied Van Lines, Inc., North American Van Lines, Inc., and Global Van Lines, Inc. ("Van Line Defendant Debtors") *(OOIDA EXHIBIT 3, Verified Statement of Daniel E. Cohen, Esq., ¶ 1)*.

11. In describing the pivotal role Owner-Operators fulfill in the Debtors' moving services operations, the Debtors' January 28, 2008, "Disclosure Statement for the

3

Debtors' Prepackaged Joint Plan of Reorganization ("Disclosure Statement")(OOIDA *EXHIBIT 7*) states as follows:

> *Owner-Operators.* Owner-operators are independent contractors who work with the Company's agent network and the Company and provide household goods and specialty transportation fulfillment services. In most circumstances, the owner-operators own their trucks and coordinate obtaining the labor needed to service customer moves. As of December 31, 2006, across the Company network in North America, there were approximately 1,900 owner-operators contracted almost exclusively by agents in household goods moving and fifty-one agent contracted owner-operators in the Company's Special Products moving business, which provides for the transportation of non-household goods freight. There are currently fifteen owner-operators contracted directly by the Company's Special Products moving business.

12. The OOIDA Class is a substantial unsecured creditor of the Debtors in this proceeding. The Debtors' February 5, 2008 "Consolidated List of Creditors Holding The Thirty Largest Unsecured Claims" (OOIDA *EXHIBIT 4*) identifies the OOIDA Class as holding a "$5,000,000 Undisputed Litigation/Settlement" claim against the Debtors. *Id*. The OOIDA Class claim is the second largest claim within the Debtors' February 5, 2008 "Consolidated Listing." *Id.*

13. The $5 million "Undisputed Litigation/Settlement" claim which the OOIDA Class holds against the Debtors arises from a class action Settlement Agreement ("OOIDA *EXHIBIT 5*") executed by the Van Line Defendant Debtors SIRVA, Inc., Allied Van Lines, Inc., North American Van Lines, Inc., and Global Van Lines, Inc., effective April 12, 2007.

14. The Settlement Agreement resolved claims against the Van Line Defendant Debtors for violations of federal laws regulating the operational agreements between the Van Line Defendant Debtors and members of the OOIDA Class, including unauthorized deductions from compensation due to the OOIDA Class members under

their operating agreements with the Van Line Defendant Debtors. *See generally OOIDA v. Allied Van Lines*, 231 F.R.D. 280, 281 (N.D. Ill. 2005)(plaintiffs alleged violations of the federal Truth-in-Leasing regulation at 49 C.F.R. § 376 by, *inter alia*, (1) conditioning any return of escrow funds on 30 days notice of lease termination; (2) requiring owner-operators to pay for a variety of administrative and other services; and (3) charging owner-operators for public liability ["BI/PD"] insurance premiums).

15. The Settlement Agreement required the Van Line Defendant Debtors to pay the OOIDA Class $8 million, and to implement a new Independent Contractor Operating Agreement ("ICOA") and "Instructions" to their Agents, mandating the discontinuation of the reductions to Owner-Operator compensation that were the subject of the litigation. (*OOIDA EXHIBIT 5* at 6-7; *EXHIBIT* 6, "Instructions")("Under the ICOA, BI/PD liability insurance … costs are not to be charged to [Owner-Operators]. These charges will be included in your overhead costs….. Fees should not be imposed with respect to services, such as advertising, marketing, and general bookkeeping, which the [Agent] customarily uses in its business and which does not directly benefit the [Owner-Operators]").

16. The OOIDA Class Action Settlement Agreement was given final approval by the United States District Court for the Northern District of Illinois by Order entered September 28, 2007 (*Exhibit A to Verified Statement of Daniel E. Cohen, Esq., OOIDA EXHIBIT 3).*

17. The Settlement Agreement required the Van Line Defendant Debtors to pay the OOIDA Class $8 million in three installments over the course of twenty-four months (OOIDA *EXHIBIT 5 at 5-6*). The Van Line Defendant Debtors paid the first $3

million installment in June 2007; with the second $3 million installment due to be paid in June 2008, and the final $2 million installment due to be paid in June 2009. *Id*.

18. The Debtors seek to extinguish their obligation to make *any* payment on the $5 million balance due under the Settlement Agreement. (*OOIDA EXHIBIT 2, March 3, 2008 Declaration of Adam Paul, ¶ 2*).

19. The claim of the OOIDA Class is based on a contract debt – the Settlement Agreement – which has been approved by the United States District Court for the Northern District of Illinois. *(OOIDA EXHIBIT 3, Verified Statement of Daniel E. Cohen, Esq., ¶ 5)*. The OOIDA Claim is therefore not an unripe or speculative litigation claim. Indeed, the Debtors "Consolidated Listing" (*OOIDA EXHIBIT 4*) admits that the OOIDA Claim is both "*Undisputed," and liquidated* in the amount of $5 million.

20. The Class Members who are entitled to payment under the Settlement Agreement are Owner-Operators who have leased equipment to the Van Line Defendant Debtors. (*OOIDA EXHIBIT 5*). Although the schedule of creditors attached to the Paul Declaration seems to imply that the Owner Operator Independent Drivers Association is the Creditor entitled to proceeds of the Settlement Agreement - it is the OOIDA Class, i.e., thousands of Owner-Operators who are entitled to those proceeds.[1] By Order entered March 13, 2008, the United States District Court for the Northern District of

---

[1] The Owner Operator Independent Drivers Association is not a creditor of the Debtors. *(EXHIBIT 3, Verified Statement of Daniel E. Cohen, Esq., ¶ 6)*. The Owner Operator Independent Drivers Association was designated as a Class representative for the OOIDA Class pursuant to Fed. R. Civ. P. 23. *Id.*

Illinois directed undersigned Class Counsel to pursue recovery of assets from the Debtors' estate for the benefit of the OOIDA Class as follows:

> Class Counsel is authorized to take actions in the [DJK] bankruptcy proceeding to represent the interests of the Class and to pursue recovery of assets from the bankruptcy estate of the Van Line Defendants for the benefit of the Class.

*(OOIDA EXHIBIT 3, Verified Statement of Daniel E. Cohen, Esq., ¶ 7).*

## **GROUNDS FOR OBJECTION**

21. The attempted classification of the OOIDA Class Claim in Class 5 violates the stated standards for classification in the proposed Plan. Under the Debtors' Plan, the singular criterion for classification of any Class 5 Creditor holding a general unsecured claim is whether the claim arises "with an Entity with whom the Debtors have ceased ongoing business relationships …." (*OOIDA EXHIBIT 1*, ARTICLE III, ¶ B. 5; ARTICLE I, ¶ A. 52). The Debtors' attempt to categorize the OOIDA Class as a Class 5 Creditor, or their claim as a Class 5 Claim, is therefore unjustifiable under the criteria of their own Plan, and impermissible under the Bankruptcy Code because – by Debtors' own classification criteria and admissions - Owner-Operators are substantially similar to Class 4 Creditors, and substantially different from Class 5 Creditors.

22. By the Debtors' own admissions, there is no question that Owner-Operators have "ongoing business relationships" with Debtors; and indeed, that they have comprised the central workforce necessary for the maintenance of the Debtors' *past, current, and future* moving services operations. Perhaps the strongest factual support for the clarification or reclassification of the OOIDA Class is found in the Debtors' January 28, 2008, "Disclosure Statement for the Debtors' Prepackaged Joint Plan of

Reorganization ("Disclosure Statement")(*EXHIBIT 7*).  There, the Debtors describe their moving services operations as follows:

> ***Moving Services North America***
>
> Through the Company's Allied®, NorthAmerican® and Global® branded networks, the Company provides interstate moving services, including household goods packing, storage and transportation services, throughout the United States and Canada. The Company has a leadership position in the industry, and the Company's Allied® and NorthAmerican® trademarks are considered two of the most widely recognized and respected brand names in moving services.

(*OOIDA EXHIBIT 7* at 10).

23. In describing the integral role Owner-Operators fulfill in the Debtors' moving services operations, the Disclosure Statement elaborates as follows:

> *Owner-Operators.* Owner-operators are independent contractors who work with the Company's agent network and the Company and provide household goods and specialty transportation fulfillment services. In most circumstances, the owner-operators own their trucks and coordinate obtaining the labor needed to service customer moves. As of December 31, 2006, across the Company network in North America, there were approximately 1,900 owner-operators contracted almost exclusively by agents in household goods moving and fifty-one agent contracted owner-operators in the Company's Special Products moving business, which provides for the transportation of non-household goods freight. There are currently fifteen owner-operators contracted directly by the Company's Special Products moving business.
>
> *****
>
> The Debtors' moving services business utilizes numerous trucks and tractor trailers that depend on fuel in the performance of day-to-day services in the movement of household and office goods. The Debtors often employ the services of third-party transportation providers, particularly owner-operators in the U.S. domestic moving business, who also depend on fuel and, as a result, are subject to variations in fuel prices.
>
> *****
>
> Also, agents and owner-operators provide a significant portion of the Debtors' packing, warehousing, and hauling services. Recently, the Debtors and their agents have had some difficulty obtaining or retaining qualified owner-operators due to industry conditions

(*OOIDA EXHIBIT 7* at 11, 18).

24. Upon consummation of the OOIDA Class Settlement, the Debtors issued a Press Release which expressly acknowledged that the Settlement would provide tangible benefits to their entire moving services network, including the recruitment and retention of Owner-Operators:

> "We are very pleased to have brought this issue to closure and strongly feel this settlement to be in the best interests of our company and our network of branded agents," said Michael McMahon, SIRVA's President, Moving Services North America. "We believe that the new independent contractor operating agreement will be a benefit to our agent's owner-operators and to the entire SIRVA network. Additionally, it will enhance our ability to recruit and retain quality drivers."

(*EXHIBIT 8*).

25. As a matter of federal statutory and regulatory law, the Debtors – as federally regulated motor carriers – have particularized duties and responsibilities with respect to their owner-operators which cannot be compromised, alienated, or disavowed through, e.g., the use of agents. As a starting point in this regard, 49 U.S.C. § 14102 ("ICC Act") imposes the following statutory obligations upon motor carriers:

> **§ 14102. Leased motor vehicles**
>
> **(a) General authority of Secretary.**--The Secretary may require a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 that uses motor vehicles *not owned by it* to transport property under an arrangement with another party to--
>
> **(1)** *make the arrangement in writing signed by the parties specifying its duration and the compensation to be paid by the motor carrier;*
>
> **(2)** carry a copy of the arrangement in each motor vehicle to which it applies during the period the arrangement is in effect;
>
> **(3)** *inspect the motor vehicles and obtain liability and cargo insurance on them;* and

> **(4)** *have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.*

*Id.*

26. As a matter of federal statutory and regulatory law, Debtors and Owner Operators have a "business relationship." In *Judy v. Tri-State Motor Company*, 844 F. 2d 1496 (11th Cir. 1988), the Eleventh Circuit chronicled a number of cases holding that the ICC Act effectively created a ***statutory employment relationship between owner-operators and motor-carriers***:

> [B]ecause the Interstate Common Carrier Act amendments require motor carriers to assume "full direction and control" of vehicles leased to them, the drivers of such vehicles, although they may not have been directly hired by the carrier, are deemed to be statutory employees of the carrier just as if the carrier were the owner of the vehicle. *See Simmons v. King,* 478 F.2d 857, 867 (5th Cir.1973) (driver became statutory employee of lessee, who accordingly became vicariously liable as a matter of law for the negligence of the driver). Accordingly, in *White* the court determined that both drivers-the decedent and the driver actually on duty-were statutory employees of the carrier under federal law.

*Id. Citing White v. Excalibur Ins. Co.*, 599 F. 2d 50 (5th Cir.), *cert denied.*, 444 U.S. 965 (1979).

27. With particular respect to household goods carriers, such as the Van Line Defendants, 49 U.S.C. § 13907 provides:

> **§ 13907. Household goods agents**
>
> **(a) Carriers responsible for agents.**--Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal

services) and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.

28. Under the federal Truth-in-Leasing Regulations, 49 C.F.R. Part 49 ("Regulations") – the regulations giving rise to the OOIDA litigation and Class Settlement with the Van Line Defendants– motor carriers are required to ensure that their Owner-Operators are compensated in strict accordance with the Regulations as follows:

**49 C.F.R. § 376.11 - General leasing requirements**

[T]he authorized carrier may perform authorized transportation in equipment it does not own only under the following conditions:

(a) Lease. There shall be a written lease granting the use of the equipment and meeting the requirements contained in § 376.12.

**49 C.F.R. § 376.12 - General leasing requirements**

**§ 376.12 Written lease requirements.**

[T]he written lease required under § 376.11(a) shall contain the following provisions. The required lease provisions shall be adhered to and performed by the authorized carrier.

(a) Parties. The lease shall be made between the authorized carrier and the owner of the equipment. The lease shall be signed by these parties or by their authorized representatives.

\*\*\*

(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

\*\*\*

(d) Compensation to be specified. The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease.

***

> (g) Copies of freight bill or other form of freight documentation. When a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill or a computer-generated document containing the same information, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill.
>
> ****
>
> (h) Charge-back items. The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.
>
> ****
>
> (1) The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906.

29.     49 C.F.R. 376.12(m) imposes the following express mandate on household goods carriers, defeating any notion that the carrier's use of agents minimizes, in any fashion, its duties to owner-operators under the Regulations:

> (m) This paragraph applies to owners who are not agents but whose equipment is used by an agent of an authorized carrier in providing transportation on behalf of that authorized carrier. In this situation, the authorized carrier is obligated to ensure that these owners receive all the rights and benefits due an owner under the leasing regulations, especially those set forth in paragraphs (d)-(k) of this section. This is true regardless of whether the lease for the equipment is directly between the authorized carrier and its agent rather than directly between the authorized carrier and each of these owners. The lease between an authorized carrier and its agent shall specify this obligation.

30. In *OOIDA v. Mayflower Transit Inc.*, 2006 WL 1547084 (S.D. Ind., June 1, 2006), the court aptly summarized the salutary objectives of 49 C.F.R. § 376.12(m) as follows:

> 49 C.F.R. § 376.12(m) expressly recognizes a loophole in the original Leasing Regulations that potentially could be abused by carriers whereby the ability of a carrier to engage in actions in violation of the regulations (e.g. denying an owner his rights and benefits) could be avoided simply by employing an agent to perform the "dirty work" for the carrier. Our conclusion does not permit Mayflower to sidestep or otherwise avoid its liability and responsibility via the loophole sought to be eliminated by 49 C.F.R. § 376.12(m).

*Id.* * 5.

31. In its "Objection" to the OOIDA Motion, Debtors asserted that a claim qualifies for classification under Class 4 under the Proposed Plan only if the Debtors have determined that such classification will provide a corresponding benefit to the estate or the Debtors' ongoing operations or to Creditors. As previously shown, payment of the OOIDA Class Claim will benefit Owner Operators who provide critical services to the Debtors and will facilitate recruitment of drivers – a fact recognized by Debtors when they issued a Press Release to Investors announcing the benefits of the OOIDA Class settlement. *OOIDA EXHIBIT 8*. In addition, the Debtors' "Benefit" theory can not be found in the Proposed Plan or in the Paul Declaration.

32. Section 1122 of the Bankruptcy Code vests in the debtor the authority to classify claims. However, such general authority is not unbridled or immune from judicial review. "Although section 1122(a), by its terms, doesn't require that all similarly-situated claims be classified together, case law has made clear that separate classification of substantially similar unsecured claims is permissible only when there is a

*reasonable basis for doing so* or when the decision to separately classify "*does not offend one's sensibility of due process and fair play*." *In re Adelphia Communications Corp.*, 368 B.R. 140, 246-47 (Bankr. S.D.N.Y. 2007)(quoting *In re One Times Square Assoc. Ltd. P'ship*, 159 B.R. 695, 703 (Bankr. S.D.N.Y. 1993) *aff'd w/o opinion*, 41 F.3d 1502 (2nd Cir. 1994)) (emphasis added). As the Second Circuit noted: "a wholly permissive reading of the statute would render subsection (b) of § 1122, which specifically allows separate classification of small claims, superfluous." *In re Boston Post Road Ltd. Partnership*, 21 F.3d 477, 482 (2d Cir. 1994) (citing *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III)*, 995 F.2d 1274, 1279 (5th Cir. 1991), *cert. denied*, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992)). *See also In re Snyder Drug Stores, Inc.* 307 B.R. 889 (Bankr. N.D. Ohio 2004)(addressing acceptable standards for placing a claim in a particular class).

## **WAIVER OF REQUIREMENT FOR ADDITIONAL MEMORANDUM**

Waiver of any requirement for additional legal memorandum in support of this Objection is requested on the basis that the legal citations are set forth herein, are not voluminous, and that OOIDA has adopted in addition, the arguments made against confirmation by the Committee of Unsecured Creditors and the authorities therein are fully set forth.

## CONCLUSION

For the reasons set forth herein, the OOIDA Class respectfully requests that this Court enter an Order denying confirmation of the Proposed Plan of Reorganization.

Dated: Washington, D.C.
April 11, 2008

        THE CULLEN LAW FIRM PLLC

        */s/ Daniel E. Cohen*
        Daniel E. Cohen (D.C. Bar No. 414985)
        1101 30th St NW, Ste. 300
        Washington, DC 20007
        Telephone: 202-944-8600
        Facsimile: 202-944-8611

        */s/ Francis P. Dicello*
        Francis P. Dicello (D.C. Bar No. 80051)
        P.O. Box 6238
        Washington, D.C. 20015
        Phone: 202-215-6417
        Fax: 202-364-0680

        COUNSEL FOR THE OOIDA CLASS