**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------
                                  :          Chapter 11

In re                            :

                                  :          Case No. 08-10375 (JMP)

DJK Residential LLC, *et. al*.,         :

                                  :          (Jointly Administered)

                   Debtors.        :

                                  :
--------------------------------------------------------------


**MEMORANDUM DECISION GRANTING OBJECTION TO CLAIM NUMBER 138 FILED ON BEHALF OF IFL INDUSTRIES, INC., AIRQUEST INDUSTRIES, INC. AND WILLIAM D. OLSON**


KIRKLAND & ELLIS, LLP
*Attorneys for Debtors*
200 East Randolph Drive
Chicago, IL 60601

      Adam Paul, Esq.

KIRKLAND & ELLIS, LLP
*Attorneys for Debtors*
555 California Street
San Francisco, CA 94104

      Eliot A. Adelson, Esq.

ZIMMERMAN REED, PLLP
*Attorneys for Claimants, IFL Industries, Inc.,*
*Airquest Industries, Inc. and William D. Olson*
14646 North Kierland Boulevard, Ste. 145
Scottsdale, AZ 85254

      Barry G. Reed, Esq.

**JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE**

### *Introduction*

Debtors have objected (the "Objection") to claim number 138 (the "Claim") filed

on behalf of IFL Industries, Inc, Airquest Industries, Inc. and William D. Olson

(collectively the "Claimants") seeking to dismiss, disallow and expunge the Claim. (ECF

Doc. # 660.) The Claim is unliquidated and seeks substantial unspecified damages of

almost forty million dollars due to allegedly illegal incentives offered for using particular

moving companies within the specialized market for building and transporting exhibition

booths used in trade shows and conventions. The Claim repeats the same causes of

action that are pending in a related district court litigation in the Northern District of

Illinois (the "District Court Action").[1]

The District Court Action originally named the Debtors and certain other

interstate van lines and moving companies as defendants.[2] The defendants, including the

Debtors, are alleged to have participated in an arrangement styled as a "kickback" that

involved secret and illegal volume incentives to exhibit builders that were frequent users

of the moving services provided by the defendant moving companies. All other

defendants in the District Court Action have been dismissed as parties and the litigation

remains open only as it relates to claims against the Debtors.

Claimants assert that these allegedly improper undisclosed incentives and

discounts were widespread within the industry and that they amounted to a form of unfair

---

[1] According to docket entries in the District Court Action, a status hearing is scheduled for November 17, 2009, that is to occur on the condition that the Debtors' chapter 11 cases have been closed and Debtors are no longer protected by the automatic stay. (Case No. 1:08-cv-00060, ECF Doc. # 95.)

[2] Defendants included Sirva, Inc. f/k/a allied Worldwide, Allied Van Lines, inc., North American Van Lines, Inc., Global Van Lines, Inc., Unigroup, Inc., Mayflower Transit, LLC, United Intermode, LLC, Atlas Van Lines, Inc., and Specialized Transportation Agent Group, Inc.

competition making it virtually impossible for Claimants to compete and retain market

share with customers that assembled and shipped exhibition booths. Claimants' business

as an independent broker engaged in coordinating the production and delivery of

exhibition booths eventually failed, and the Claim seeks damages relating to the demise

of Claimants' business allegedly caused by the illegal scheme.

The Claim adopts the averments and theories of the complaint in the District

Court Action and is divided into six counts: (1) violation of § 1962(c) of the Racketeer

Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968; (2)

violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) violation of § 1 of the

Sherman Antitrust Act, 15 U.S.C. § 1; (4) tortious interference with prospective

economic advantage; (5) unfair competition; and (6) unjust enrichment. (*Id.*, at Ex. C ¶

2.) In their response to the objection (the "Response"), the Claimants argue that the

Claim should not be summarily dismissed and request additional discovery in aid of

proving the Claim. (Resp. ¶ 6, ECF Doc. # 665.)

Given the incorporation into the Claim of allegations from the District Court

Action, the Claim serves the same purpose and functions in the same manner as a

complaint. The Court accepts the truth of all well-pleaded averments stated in the Claim

as it considers whether to grant the Objection or to allow Claimants an opportunity to

take discovery and proceed to a hearing on the merits of the Claim.[3] The Claim is

---

[3] Notwithstanding the recent decision of the Court of Appeals in *In re Dana*, there is no justification for discovery here and summary disposition is appropriate because the Claim is so lacking in detail and is so unpersuasive on its face. 2009 WL 2351614 (2d Cir. Jul. 31, 2009). Discovery is not needed, nor is it an appropriate means to buttress the Claim. The Debtors admit that they participated in the volume incentive program alleged by the Claimants, but disagree with the Claimants characterization of the program as an illegal kickback scheme. (ECF Doc. # 665, ¶ 37; Obj. ¶ 55, 62, ECF Doc. # 660; Trial Tr. 10:8-13:5, Apr. 8, 2009 P.M.) Unlike the situation described in *In re Dana*, there are no issues of fact in dispute and there is no need for discovery. The conduct is admitted, and only the characterization is

equivalent in all material respects to the complaint in the District Court Action and the Objection for all practical purposes is the same as a fully briefed motion to dismiss that complaint.

The Claim and the Objection are among the last remaining open items in these prepackaged bankruptcy cases. Originally, Debtors had proposed that litigation claims such as these be separately classified along with certain other disfavored unsecured claims so as to receive no distribution. This separate classification scheme lead to vigorous opposition during a lengthy contested confirmation hearing. On May 2, 2008, the Debtors modified this proposed adverse treatment of litigation claims and filed their first amended joint plan of reorganization (the "Plan"). Under the Plan, as amended to reflect an agreement reached with the objectors, the Claim was classified as a class 5A general unsecured claim and thereby became entitled to a distribution upon allowance equal to 25% of the allowed amount of the Claim. (Plan art. III.B.5(b), ECF Doc. # 486.)

By virtue of the confirmation and substantial consummation of the Plan, Debtors have emerged from bankruptcy with a restructured balance sheet and, since emergence, have continued their national and international moving and relocation businesses under the well-regarded trade names North American Van Lines and Allied Van Lines. (ECF Doc. # 497.) An order closing the bankruptcy cases has been entered, but the case remains open pending the resolution of this matter. (ECF Doc. # 695.)

Thus, the issues presented by the Claim, the Objection and the Response no longer have any significance to the administration of the chapter 11 cases, and the outcome will have no impact on creditor recoveries. At this juncture, the question of

---

disputed. *Cf. In re Dana,* 2009 WL 2351614 at *1 (holding that "the existence of genuine issues of material fact should have prevented the granting of summary judgment in Dana's favor.").

whether the Claim should be permitted to proceed through discovery and trial in the bankruptcy court or should be disallowed has no meaning for bankruptcy purposes, and the Claim itself is grounded in non-bankruptcy law.  In effect, the Claim is a left over--a litigation remnant that is being prosecuted and defended in the bankruptcy court but that can just as conveniently be pursued and resolved within the context of the District Court Action.  Indeed, the District Court Action probably is the more appropriate setting for determining Claimants' rights against the Debtors given the terminal status of these bankruptcy cases.

Nonetheless, the Court has considered the Claim and the Objection on the merits and has concluded that Claimants have failed to overcome the arguments presented by Debtors in the Objection.  The Claim is predicated on highly speculative and fact specific allegations of a scheme of wrongdoing that began over fifteen years ago involving participants within a narrow segment of the moving industry.  Claimants' assertions, without the benefit of hard facts or credible declarations, necessarily are broad in nature and fail to directly point to any causal connection between the alleged pricing conspiracy that is at the heart of the Claim and any provable damages for which Debtors may be found liable on any legal theory.  The Claim is long on rhetoric but short on facts, and is not self-sustaining on its face.  As such, Claimants have failed to carry their burden of proof in responding to the Objection.

For the reasons set forth below, the Court sustains the Objection and disallows the Claim, but does so without prejudice to and without limiting the Claimants' rights to prosecute their complaint against the Debtors in the District Court Action.

*Procedural Background*

The Claim seeks to recover $38,000,000 in damages allegedly caused by the conduct of Debtors and other market participants aimed at securing dominance over the national market for delivering exhibition booths to conventions and trade shows. Claimants brought the District Court Action on January 2, 2008, in the U.S. District Court for the Northern District of Illinois (the "District Court") against eight major transportation carriers asserting the same basic allegations of illegal "kickbacks" as they do here. (*Compare* Second Am. Compl., Case No. 1:08-cv-00060, ECF Doc. # 76 *with* Obj., Ex. B, ECF Doc. # 660.) On February 5, 2008 (the "Petition Date"), each of the reorganized Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code. On March 11, 2008, the District Court stayed the case against Debtors due to the pending chapter 11 cases.

On March 20, 2008, Claimants filed an amended complaint (the "Amended Complaint") in the District Court Action, and each of the defendants other than the Debtors moved to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On July 15, 2008, the District Court dismissed the Amended Complaint for failure to allege specific acts of fraud and to meet the pleading requirements of the Federal Rules of Civil Procedure. On August 14, 2008, Claimants filed a second amended complaint (the "Second Amended Complaint"), but thereafter the Claimants voluntarily dismissed the District Court Action with prejudice as to all defendants other than the Debtors.

The District Court Action is viable at this point only as to the Debtors. This selective prosecution seems to be a byproduct of the automatic stay and the fact that the

Debtors did not join with the other defendants in seeking dismissal of the District Court

Action. Debtors contend that the abandonment of claims against the other defendants

demonstrates the weakness of the Claim and was precipitated by the threat of Rule 11

sanctions because the allegations in the Second Amended Complaint were meritless.

(Obj. ¶ 41, ECF Doc. # 660.) Regardless of the rationale for voluntary dismissal of

claims against the other parties, Debtors are now the only defendants in the District Court

Action.

On October 30, 2008, Claimants filed the Claim. Following lengthy briefing and

oral argument with respect to the Claim, the Objection and the Response, the Court

reserved judgment. (ECF Doc. # 660; ECF Doc. # 665; Trial Tr. 53:21-25, Apr. 8, 2009

P.M..)

### *Factual Background*

The design, construction, storage and shipment of exhibit booths used at trade

shows is a complex process. Exhibitors engage exhibit builders to manage the

coordinated functions of creating, delivering and setting up exhibit booths for

presentation at trade shows or convention centers. Due to the need for special handling

of these large custom-made booths, builders typically would subcontract the

transportation of these exhibits to third party carriers. It was the practice of the carriers to

bill the builders directly and for the builders to then pass that cost along to their

customers, the exhibitors, as a line item disbursement for transportation cost.

Starting in the 1980's, Claimants engaged in the business of providing marketing

and consulting services to carriers that transported these exhibition booths. Claimants'

revenue consisted of commissions earned for producing business for the carriers. In the

mid 1990's, Claimants began to experience a substantial drop in their business, allegedly due to the volume discounts provided to the exhibit builders by the major carriers in the industry. Claimants argue that these volume discounts either amounted to commercial bribery or violated the Travel Act, 18 U.S.C. § 1952 and constituted mail and wire fraud. (Obj. Ex. C ¶ 60, ECF Doc. # 660; Resp. ¶ 52, ECF Doc. # 665.) These allegedly wrongful volume discounts are the predicate acts upon which Claimants base all of their claims including violations of RICO and the Sherman Antitrust Act.

Claimants allege that Debtors entered into contracts directly with exhibit builders whereby the transportation charges would be inflated in an amount equal to the claimed "kickback," and these excessive charges then would be passed through to the client exhibitor as the cost of transporting the exhibit booth. (Resp. ¶ 10, ECF Doc. # 665.) Upon payment of the bill for transportation, the Debtors would set aside a predetermined incentive amount in an escrow account to be paid to the builder upon meeting a specified volume threshold. (*Id.*) Claimants allege that these volume-pricing incentives inappropriately changed the market behavior of the builders who no longer were motivated to find other transportation services on more favorable terms. The consequence is that Claimants' business suffered as exhibit builders increasingly elected to deal only with those carriers that offered these so-called "kickback" arrangements. Claimants assert, as a result, that Debtors are responsible for the failure of their business.

### *Discussion*

The filing of a proof of claim constitutes "prima facie evidence of the validity and amount of a claim." FED. R. BANKR. P. 3001(f). However, "if the objector produces 'evidence equal in force to the prima facie case . . . which, if believed, would refute at

8

least one of the allegations that is essential to the claim's legal sufficiency[,]'" the burden

of proof then shifts back to the claimant. *In re Oneida, Ltd.*, 400 B.R. 384 (Bankr.

S.D.N.Y. 2009) (first alteration in original) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d

167, 173-74 (3d Cir. 1992)). The Claimant must then "prove by a preponderance of the

evidence that under applicable law the claim should be allowed." *Id.*; *Helliwell v.*

*George R. Burrows, Inc.* (*In re George R. Burrows, Inc.*)*,* 156 F.2d 640, 641 (2d Cir.

1946) ("[A]s soon as the trustee introduced any substantial evidence in opposition the

claimants needed to establish by a preponderance of all the evidence that the claims as

filed were based on facts which entitled the claimants to their allowance under the law.

The burden of over-all proof was then on the claimants."). *See also Raleigh v. Ill. Dep't*

*of Revenue,* 530 U.S. 15, 20 (2000); *Wright v. Holm* (*In re Holm*)*,* 931 F.2d 620, 623 (9th

Cir. 1991); *In re Rockefeller Ctr. Props.,* 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

Here, the burden plainly has shifted to Claimants. The Debtors have credibly refuted the

claimed illegality of the volume incentive discount programs and have effectively

challenged the standing of Claimants to bring such claims.[4]

First, while the Claimants assert six causes of action, all six of these stem from

the same alleged activities. The Claimants allege that the Debtors participated in an

illegal "kickback" scheme whereby the Debtors routinely "padded" their shipping rates,

submitted the bills to the builders, placed the extra amount in an escrow account upon

payment, and later refunded this amount to the builders. (Resp. ¶ 1, ECF Doc. # 665.) In

the Objection, the Debtors freely admit that they refunded a percentage of the total cost of

---

[4] Because the challenged conduct took place over a period of many years starting more than fifteen years
ago, the Debtors also have raised a statute of limitation defense as a bar to all counts set forth in the
Claim. This is a persuasive additional reason to disallow the Claim, but the Court does not rely on this
defense in its analysis.

transportation to exhibit builders based on the volume of business, and this refund was

calculated at the end of the quarterly payment schedule.  (Obj. ¶ 55, 62, ECF Doc. # 660;

Trial Tr. 10:8-13:5, Apr. 8, 2009 P.M.)  The Debtors contend that their actions were

permissible and governed by 49 U.S.C. 13708 (c), which sets forth volume incentive

standards for the trucking industry.  (Obj. ¶ 4, ECF Doc. # 660; Trial Tr. 7:3-9:7, Apr. 8,

2009 P.M.)

Second, with respect to the Claims arising under the RICO Act and the Sherman

Antitrust Act, the Debtors argue that Claimants are incapable of establishing a direct

compensable injury and therefore lack the requisite standing to bring the Claim.  To show

standing under either the RICO Act or the Sherman Antitrust Act, a claimant must show

that the predicate act was the proximate cause of its injury. [5]  *Compare Sedima, S.P.R.L.,*

*v. Imrex Co.,* 473 U.S. 479, 497 (1985) ("[T]he compensable injury [in a RICO case]

necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern,

for the essence of the violation is the commission of those acts in connection with the

conduct of an enterprise.") *and Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268

(1992) (holding that the predicate act must be the proximate cause of the plaintiff's

injury; a but-for causational argument is not sufficient) *with Brunswick Corp. v. Pueblo

Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) ("[Claimants] must prove more than injury

causally linked to an illegal presence in the market.  Plaintiffs must prove antitrust injury,

which is to say injury of the type the antitrust laws were intended to prevent and that

flows from that which makes defendants' acts unlawful.").

---

[5]  That this test is very similar to the one used to analyze the RICO claims is no accident, as the Court in
*Holmes* based its definition of proximate cause in RICO cases on that which had been developed for
Sherman Antitrust Act claims.  *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)
(discussing the similarities in the relevant language in the Sherman Antitrust and RICO acts).

Debtors argue that Claimants' injury at most is indirect and that the only party

with the standing to assert a claim for compensable injury would be the exhibitor, the

party that received and paid the bill submitted by the exhibit builder and that may be able

to complain about not having received credit for the volume discount later earned by the

builder.  Only the exhibitor, the customer who may have paid more than the actual net

cost of transporting the exhibit booth to a trade show, could possibly claim harm as an

alleged victim of the "kickback" scheme.  (Obj. ¶¶ 75, 94, ECF Doc. # 660.)  Debtors

also argue that Claimants' injury is indefinite and unprovable, because the Claimants

make no attempt to quantify the injury or show how it was the Debtors' actions, and not a

myriad of other possibilities, that caused or contributed to the failure of Claimants'

business.  (*Id.*, at ¶ 96.)

In determining whether a party has met their burden in connection with a proof of

claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal

Rules of Civil Procedure.  *See In re Rockefeller Ctr. Props.,* 272 B.R. at 542 n.17

(applying the requirements of Rule 8 ("Rule 8") and Rule 9 ("Rule 9") of the Federal

Rules of Civil Procedure to proofs of claims); *In re 20/20 Sport, Inc.*, 200 B.R. 972, 978

(Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a

creditor's claim to a civil complaint [and] a trustee's objection to an answer . . . .").

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain

statement of the claim showing that the pleader is entitled to relief . . . ."  FED. R. CIV. P.

8(a)(2).  While the Claim "does not need detailed factual allegations, . . . [it] requires

more than labels and conclusions . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2006).  The Claimant must assert "enough facts to state a claim to relief that is plausible

on its face." *Id.* at 577. To show facial plausibility, the Claimant must plead "factual content that allows the court to draw the reasonable inference that the [Debtor] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Rule 9 imposes more stringent pleading requirements when a party is alleging fraud. FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Debtors argue that Rule 9 should apply to the Claim, because the predicate acts on which the Claim is based include elements of fraud. (Obj. ¶ 50, ECF Doc. # 660.) Claimants contend that because the Claim primarily asserts allegations of "commercial bribery" and does not specifically or explicitly refer to fraud as the predicate violation, such claims should be analyzed under a Rule 8 standard. (Resp. ¶ 20, ECF Doc. # 665)

While a party may allege violations of the RICO and Antitrust Act and need only satisfy the Rule 8 pleading standards, when the fraudulent acts are pervasive throughout the complaint, Rule 9 is the appropriate pleading standard. *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 171 (2d Cir. 1999). *See also Fresh Meadow Food Servs., LLC, v. RB 175 Corp.*, 282 Fed. Appx. 94, 96 ("Where, as here, a RICO claim's predicate acts include allegations of fraud, the circumstances constituting the alleged fraud must be pled with particularity"); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("[Rule 9] is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.").

Fairly construed, the Claim is grounded in fraud based claims constituting mail or wire fraud or a violation of the Travel Act. All of the Claimants' allegations rest on activities that are fraudulent or deceitful in nature. The Claim loosely and repeatedly

refs to fraud and bribery but does so in the most general terms. Because the predicate

acts are based on fraud, Rule 9 applies.

The Claim is inadequate under this heightened pleading standard, because the

Claim does not specify the time, place or identity of persons associated with the

averments of fraud.[6] The Claim also fails under the Rule 8 standard, and so there is no

need for an in-depth analysis of the Claim under the stricter pleading requirements of

Rule 9. Regardless of whether it is tested under Rule 8 or Rule 9, the Claim is too

general and conclusory to be allowed.

In their Response and at oral argument, Claimants failed to show by a

preponderance of the evidence that the Claim was facially plausible. The Claim is

littered with allegations of bribery and assertions that a "kickback scheme" was in place

that harmed the Claimants, but it is devoid of factual support. The Claimants assert that

transportation contracts were fraudulent over an indeterminate period of time, but

nowhere do Claimants provide facts to support any of these assertions. *See Ashcroft v.*

*Iqbal*, 129 S.Ct. 1937, 1954 (2009) ("[T]he Federal Rules do not require courts to credit a

complaint's conclusory statements without reference to its factual context.").

General allegations alone are insufficient. Claimants have not shown that the

alleged kickback scheme, even if it were fraudulent, contributed to the loss of any

business. Neither the Claim nor the Response provides any connection between the

pricing incentives and any provable injury. Claimants simply rely on the Debtors'

admission that they participated in the volume incentive program as support for their

---

[6] The District Court considered the same pleading deficiencies and noted that, "The entire corpus of alleged misconduct involves an alleged intentional misrepresentation of Defendants' actual cost of transportation and, because the alleged Travel Act violations rest exclusively upon deficient averments of fraud, Plaintiffs [sic] RICO claim fails." Obj. Ex. E at 6, ECF Doc. # 660).

Claim (Resp. ¶¶ 37-38, ECF Doc. # 665), but Claimants must do more to overcome the Objection.

Claimants must explain why the volume incentive program was illegal and how it caused compensable damages. The Claim is so general, conclusory and lacking in factual support that the Claimants have not "nudged their claims across the line from conceivable to plausible . . . ." and have therefore failed in the face of a strong objection to meet the minimum standard necessary to support a challenged proof of claim. *Twombly*, 550 U.S. at 1951.

### *Conclusion*

For the reasons stated, the Claim is disallowed and expunged in its entirety. However, as expressed earlier in this memorandum decision, the Court believes that Claimants' rights to proceed with the District Court Action should be unaffected by this determination. The pleading standards applicable to the Claim and to the Second Amended Complaint are the same for all practical purposes, but in disallowing the Claim the Court is not precluding the Claimants from pursuing any permissible causes of action against the Debtors in the District Court, nor is it limiting any defenses or claims that may be raised by the Debtors in the District Court Action.

The Court is resolving here what amounts to a procedural anomaly, a strenuous claim objection presented at the tail end of fully administered chapter 11 cases that also happen to overlap with and touch directly on the subject matter of other pending but currently inactive federal litigation. Given these circumstances, disallowance of the

Claim should not impact, in any respect, the prosecution or defense of the District Court

Action.

**SO ORDERED:**

Dated: New York, New York         _____*s/ James M. Peck*_____
       September 2, 2009           HONORABLE JAMES M. PECK
                                        UNITED STATES BANKRUPTCY JUDGE